PEOPLE v HELLSTROM

Docket No. 252984. Submitted August 11, 2004, at Detroit. Decided
  October 21, 2004, at 9:10 a.m. Leave to appeal sought.
    Thomas L. Hellstrom, charged in the Macomb Circuit Court with
    eight counts of criminal sexual conduct involving two children,
    moved for the suppression of evidence of child pornography found
    in a home computer following the execution of search warrants.
    The initial search warrant had not authorized the police to
    examine the files on computers, and an amended search warrant
    authorizing such examination on the basis of the same affidavit
    that supported the original warrant was issued and executed. The
    court, Diane M. Druzinski, J., denied the motion, ruling that
    probable cause for the warrants had been properly determined by
    considering the affiant police officer's experience that porno-
    graphic items were often found in crimes of this sort, that the
    defendant lived at the location at which the complainants alleged
    the offenses occurred, and that the warrants were not overbroad.
    The defendant appealed by leave granted.
        The Court of Appeals *held*:
        1. The search was valid on the basis of the good-faith exception
    to the Fourth Amendment exclusionary rule. The officers conduct-
    ing the search of the defendant's home acted in good-faith reliance
    on the magistrate's determinations of probable cause and techni-
    cal sufficiency with regard to the search warrants. There was no
    reason for the officers to believe that the facts alleged in the
    affidavit were false or that the magistrate was misled by false
    information. Given the affiant's knowledge that pedophiles gener-
    ally possess pornographic images for sexual gratification and given
    that the defendant was alleged to have sexually assaulted two
    young girls, and that those who do so usually possess child
    pornography in their home, it was reasonable to believe that the
    defendant would have child pornography in his home.
        2. The probable-cause standard in Michigan relates to whether
    contraband or evidence of a crime will be found in a particular
    place. It does not require that the evidence sought be particular to
    the specific offense a defendant is alleged to have committed.
        Affirmed.

NEFF, P.J., dissenting, stated that, although she agrees with the majority's discussion of the legal principles underlying the good-faith exception to the Fourth Amendment exclusionary rule, the facts of this case do not justify the application of the good-faith exception.

The good-faith exception turns on objective reasonableness: whether the police officers' reliance on the magistrate's determination of probable cause and on the technical sufficiency of the search warrant was objectively reasonable. In this case, the affidavit was so lacking in the indicia of probable cause that it rendered official belief in its existence entirely unreasonable. The affidavit essentially stated that the affiant received criminal sexual conduct complaints from two different victims against the defendant and the complainants were neighbors of the defendant. These facts do not conceivably justify a reasonably cautious person in concluding that evidence of the pornographic material specified in the warrant would be found at the defendant's house.

The affiant admitted that he had very little experience on pedophile criminal sexual conduct cases, but avowed in his affidavit that, on the basis of his experience as a detective investigating sexual assaults, he knew that such assaults may also lead to the use of pornography for sexual gratification and that child sexual assaultive predators are known to have items of sexual gratification inside their homes, computers, and other devices. These averments in the warrant affidavit are almost completely without foundation or a substantive base. Any reliance on them is completely unjustified, particularly because the affiant participated in the search.

The majority accepted the superficial recitation of probable cause in the affidavit. This turns the good-faith exception into a carte blanche exception to an invalid search warrant as long the affidavit contains some claim reciting something. The affiant made no allegations of conduct involving child pornography or pedophilia. This search was a legally unsanctioned profile search, not one based on the specificity required by constitution and statute.

The trial court's denial of the defendant's suppression motion should be reversed.

1. SEARCHES AND SEIZURES — EXCLUSIONARY RULE — GOOD-FAITH EXCEPTION.

The good-faith exception to the exclusionary rule renders evidence seized pursuant to an invalid search warrant admissible as substantive evidence in criminal proceedings where the police acted in reasonable reliance on a presumptively valid search warrant that was later declared invalid; the police officer's reliance on the

magistrate's probable-cause determination must be objectively reasonable; suppression remains an appropriate remedy if the magistrate was misled by information in an affidavit that the affiant knew or should have known was false, if the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable, or if the warrant was so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing police officer cannot reasonably presume it to be valid (US Const, Am IV; Const 1963, art 1, § 11; MCL 780.654[1]).

2. SEARCHES AND SEIZURES — SEARCH WARRANTS — PROBABLE CAUSE.

The probable-cause standard for search warrants in Michigan relates to whether contraband or evidence of a crime will be found in a particular place; it does not require that the evidence sought be particular to the specific offense a defendant is alleged to have committed.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, *Carl J. Marlinga*, Prosecuting Attorney, *Robert J. Berlin*, Chief Appellate Attorney, and *Molly Zappitell*, Assistant Prosecuting Attorney, for the people.

*Bellanca, Beattie & DeLisle, P.C.* (by *Frank D. Eaman*), for the defendant.

Before: NEFF, P.J., and SMOLENSKI and ZAHRA, JJ.

SMOLENSKI, J. Defendant Thomas L. Hellstrom appeals by leave granted the order denying his motion to suppress evidence of child pornography seized from a home computer following the execution of a search warrant. Defendant was charged with four counts of first-degree criminal sexual conduct (CSC I), MCL 750.520b(1)(a), and four counts of second-degree criminal sexual conduct (CSC II), MCL 750.520c(1)(a). The instant case gives this Court its first opportunity to determine whether the "good-faith" exception to the

exclusionary rule, recently adopted in Michigan,[1] precludes suppression of evidence found during a search of defendant's home. We find that the circumstances presented here are precisely those to which the exception is meant to apply. Therefore, we affirm the trial court's decision, but for a different reason.

I

In defendant's motion to suppress, he challenged the validity of the search on the grounds that (1) the warrant(s) lacked probable cause and (2) the warrant(s) constituted "general warrants" that allowed the police unfettered discretion to seize evidence. The original search warrant described the property to be searched and seized as follows:

> 2. The property to be searched for and seized, if found is specifically described as: any and all forms of pornography, to include but not limited to all computer generated images and files, photographs, drawings, videotapes, film, printed materials, any sexually explicit material and devices. also to be included all computers, cd's [sic], dvd's [sic], floppy disc[s] all camera's [sic] and camcorders. Any and all equipment used in the storage, manufacturing, gathering or distribution of sexually explicit material. Further[,] any paperwork to establish ownership or residence of all occupants, and any mailing or billing lists related to pornography.

The affidavit to support the search warrant provided the following facts to establish probable cause:

> 3. The facts establishing probable cause or the grounds for search are:
>
> a) On 03-05-03[,] Detective Bergeron received two different complaints . . . of a criminal sexual conduct against the suspect at 30018 Manhattan, St. Clair Shores, Michigan, 48082.

---

[1] *People v Goldston*, 470 Mich 523; 682 NW2d 479 (2004).

b) Detective Bergeron has been a police officer for the past 15 years. He is currently assigned to the investigations bureau.

c) The named suspect is a resident of the address in question.

d) There are two different victim's [sic] claiming that they were both sexually assaulted by the same suspect.

e) The victim's [sic] are both neighbor's [sic] to the suspect and have been alone with him at 30018 Manhattan in the past.

f) The search of the above listed premises should help to further this investigation.

g) Based on my experince [sic] as a detective investigating sexual assaults it is known that this activity may also lead to the use of pornography for sexual gratification of the suspect.

h) It is aslo [sic] known that child sexual assault predators are known to have items of sexual gratification inside their homes, computers and other devices.

Several computers, videos, DVDs, CDs, and a camera were seized from defendant's home. However, the original search warrant did not authorize the police to look inside the computers that were taken from defendant's home. An amended search warrant was executed, which modified the type of property to be seized or searched, but did not alter the supporting facts in the affidavit. Subsequently, several images of pornographic material depicting children were found on at least one of the computers seized from defendant's home.

In making its probable-cause determination, the trial court took into consideration the affiant's experience as a police officer that items of a pornographic nature were often found in crimes of this type. The court concluded that there was a more than sufficient nexus between the affidavit, evidence, and area to be searched because

(1) defendant lived at the location and (2) the complainants alleged that the offenses occurred at defendant's home. The court also held that the warrant was not overly broad under the circumstances because the electronic equipment and accessories identified to be seized all related to devices capable of recording or storing pornography. Accordingly, the court denied defendant's motion to suppress.

II

It is well settled that both the United States Constitution and the Michigan Constitution[2] "guarantee the right of persons to be secure against unreasonable searches and seizures." *People v Kazmierczak*, 461 Mich 411, 417; 605 NW2d 667 (2000). A search or seizure is considered unreasonable when it is conducted pursuant to an invalid warrant or without a warrant where the police officer's conduct does not fall within one of the specific exceptions to the warrant requirement. *Id*. at 418. Generally, in order for a search executed pursuant to a warrant to be valid, the warrant must be based on probable cause. *Id*. at 417. Probable cause "exists where there is a 'substantial basis' for inferring a 'fair probability' that contraband or evidence of a crime will be found in a particular place." *Id*. at 417-418 (citation omitted). It is also well settled that a search may not stand on a general warrant. *People v Toodle*, 155 Mich App 539, 548; 400 NW2d 670 (1986). A search warrant must particularly describe the place to be searched and the persons or things to be seized. US Const, Am IV; Const 1963, art 1, § 11; MCL 780.654(1). The purpose of this requirement is to provide reasonable guidance to the officers executing the search with regard to the items to be seized and to prevent unfettered discretion

---

[2] US Const, Am IV; Const 1963, art 1, § 11.

in this determination. *People v Fetterley*, 229 Mich App 511, 543; 583 NW2d 199 (1998).

Ordinarily, if a warrant is determined to be invalid because it lacked a probable-cause basis or was technically deficient in some other manner, any evidence seized pursuant to that warrant, or seized subsequently as a result of the initial illegal search, is inadmissible as substantive evidence in related criminal proceedings. *Kazmierczak, supra* at 418. Certain exceptions to this exclusionary rule have been recognized in Michigan,[3] but our courts had declined to recognize a "good-faith" exception to the exclusionary rule. See, e.g., *People v Scherf*, 251 Mich App 410, 411; 651 NW2d 77 (2002), rev'd 468 Mich 488, 512-513 (2003); *People v Hill*, 192 Mich App 54, 56; 480 NW2d 594 (1991); *People v Tanis*, 153 Mich App 806, 813; 396 NW2d 544 (1986).

A

Such an exception has been recognized in the federal courts for twenty years as a result of the United States Supreme Court's decision in *United States v Leon*, 468 US 897; 104 S Ct 3405; 82 L Ed 2d 677 (1984). The "good-faith" exception renders evidence seized pursuant to an invalid search warrant admissible as substantive evidence in criminal proceedings where the police acted in reasonable reliance on a presumptively valid search warrant that was later declared invalid. *Id.* at 905. Recently, relying on the reasoning put forth in the *Leon* decision, our Supreme Court, in *People v Goldston*, 470 Mich 523; 682 NW2d 479 (2004), adopted the

---

[3] These exceptions are (1) the independent source exception, (2) the attenuation exception, and (3) the inevitable discovery exception. *People v Stevens (After Remand)*, 460 Mich 626, 636; 597 NW2d 53 (1999), quoting *People v LoCicero (After Remand)*, 453 Mich 496, 508-509; 556 NW2d 498 (1996).

good-faith exception to the exclusionary rule.

In *Goldston*, the defendant was observed impersonating a firefighter allegedly raising money for his colleagues in New York after the September 11, 2001, terrorist attacks. Following a search of his home, the defendant was charged with larceny by false pretenses, two counts of possession of marijuana, possession of a firearm during the attempt or commission of a felony, and felon in possession of a firearm. The defendant filed a motion to suppress evidence, which the trial court granted. "The court ruled that the search warrant affidavit did not connect the place to be searched with defendant and did not state the date that the police observed defendant soliciting money." *Id.* at 527. Thus, the court concluded that the affidavit did not establish the probable cause necessary to issue a warrant and, accordingly, dismissed all charges against the defendant except the charge of larceny by false pretenses. *Id.* The Court of Appeals denied leave to appeal, but our Supreme Court granted leave limited to the question whether Michigan should adopt the good-faith exception to the exclusionary rule. *People v Goldston,* 467 Mich 939 (2003).

In addressing the question whether to adopt the good-faith exception in Michigan, our Supreme Court analyzed the *Leon* decision. In *Leon*, the Court found that the exclusionary rule was not derived from the text of the Fourth Amendment, but rather was a judicially created remedy. *Goldston, supra* at 528-529, citing *Leon, supra* at 906. Therefore, application of the remedy involved weighing its benefits and costs. *Id.* at 529. "The primary benefit of the exclusionary rule is that it deters official misconduct by removing incentives to engage in unreasonable searches and seizures." *Id.* The Court concluded that " 'the marginal or nonexistent

benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion.' " *Id.* at 530, quoting *Leon, supra* at 922. *Leon* further stated:

> It is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment. In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient. . . . Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations. [*Leon, supra* at 921.]

The exclusionary rule "cannot be expected, and should not be applied, to deter objectively reasonable law enforcement activity." *Id.* at 919.

*Leon* also found that there was no basis for believing that the exclusionary rule had any significant deterrent effect on judges and magistrates with regard to their errors. *Goldston, supra* at 539-540, citing *Leon, supra* at 916-917.

> Imposition of the exclusionary sanction is not necessary meaningfully to inform judicial officers of their errors, and we cannot conclude that admitting evidence obtained pursuant to a warrant while at the same time declaring that the warrant was somehow defective will in any way reduce judicial officers' professional incentives to comply with the Fourth Amendment, encourage them to repeat their mistakes, or lead to the granting of all colorable warrant requests. [*Leon, supra* at 917.]

After determining that the exclusionary rule was not mandated by the Michigan Constitution, our Supreme Court in *Goldston* concluded:

Because we find the reasoning of *Leon* persuasive, we choose to embrace *Leon* as a matter of our interpretive right under the common law and retreat from the judicially created exclusionary rule announced in *Marxhausen*.[4] The goal of the exclusionary rule, as expressed in *Leon*, is to deter police misconduct. Thus, the goal of the exclusionary rule would not be furthered where police officers act in objectively reasonable good-faith reliance on a search warrant. [*Goldston, supra* at 538 (citations omitted).]

Accordingly, the *Goldston* Court held, "Because the exclusionary rule in Michigan is a judicially created, nonbinding rule, we interpret Const 1963, art 1, § 11 consistent[ly] with the *Leon* Court's interpretation of the Fourth Amendment and adopt the good-faith exception to the exclusionary rule in Michigan." *Id.* at 541. Applying the exception to the facts before it, the Court concluded that the officers' reliance on the search warrant was objectively reasonable and that suppression of the firearm, marijuana, and firefighter paraphernalia seized "would not further the purpose of the exclusionary rule, i.e., to deter police misconduct." *Id.* at 543. As a result, the lower court's ruling suppressing the evidence was reversed and the original charges were to be reinstated against the defendant on remand.

Therefore, as stated in *Leon* and adopted by our Supreme Court in *Goldston,* we are guided by the following principles with regard to application of the good-faith exception to Michigan's exclusionary rule:

We do not suggest [ ] that exclusion is always inappropriate in cases where an officer has obtained a warrant and abided by its terms. "[Searches] pursuant to a warrant will rarely require any deep inquiry into reasonableness," for "a warrant issued by a magistrate normally suffices to establish" that a law enforcement officer has "acted in good faith in conducting the search." Nevertheless, the officer's

---

[4] *People v Marxhausen*, 204 Mich 559; 171 NW 557 (1919).

reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues must be objectively reasonable, and it is clear that in some circumstances the officer will have no reasonable grounds for believing that the warrant was properly issued.

Suppression therefore remains an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth. The exception we recognize today will also not apply in cases where the issuing magistrate wholly abandoned his judicial role in the manner condemned in *Lo-Ji Sales, Inc v New York*, 442 US 319 [99 S Ct 2319; 60 L Ed 2d 920] (1979);[5] in such circumstances, no reasonably well trained officer should rely on the warrant. Nor would an officer manifest objective good faith in relying on a warrant based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Finally, depending on the circumstances of the particular case, a warrant may be so facially deficient—*i.e.*, in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid.

In so limiting the suppression remedy, we leave untouched the probable-cause standard and the various requirements for a valid warrant. Other objections to the modification of the Fourth Amendment exclusionary rule we consider to be insubstantial. The good-faith exception for searches conducted pursuant to warrants is not intended to signal our unwillingness strictly to enforce the requirements of the Fourth Amendment, and we do not believe that it will have this effect. As we have already

---

[5] In *Lo-Ji Sales*, the local justice wholly abdicated his duty as a "detached and neutral magistrate" when he assisted in the search himself, and abandoned his judicial role when he authorized a search warrant that, except for specification of copies of two "adult" films previously purchased by an investigator, did not particularly describe the items to be seized, but, instead, left it entirely to the discretion of the officials conducting the search to decide which items were likely to be obscene and thus subject to seizure. *Id.* at 325, 327-328.

suggested, the good-faith exception, turning as it does on objective reasonableness, should not be difficult to apply in practice. When officers have acted pursuant to a warrant, the prosecution should ordinarily be able to establish objective good faith without a substantial expenditure of judicial time. [*Leon, supra* at 922-924 (citations omitted).]

In sum, "In the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *Id.* at 926.

*Leon* further instructs:

If the resolution of a particular Fourth Amendment question is necessary to guide future action by law enforcement officers and magistrates, nothing will prevent reviewing courts from deciding that question before turning to the good-faith issue. Indeed, it frequently will be difficult to determine whether the officers acted reasonably without resolving the Fourth Amendment issue. Even if the Fourth Amendment question is not one of broad import, reviewing courts could decide in particular cases that magistrates under their supervision need to be informed of their errors and so evaluate the officers' good faith only after finding a violation.[6] In other circumstances, those courts could reject suppression motions posing no important Fourth

---

[6] In this regard, we note that the good-faith exception to the exclusionary rule does not change the reviewing court's standard for determining whether a search warrant is invalid. *Leon, supra* at 923. Appellate scrutiny of a magistrate's decision "requires the reviewing court to ask only whether a reasonably cautious person could have concluded that there was a 'substantial basis' for the finding of probable cause." *People v Russo*, 439 Mich 584, 603; 487 NW2d 698 (1992). A trial court's factual findings are reviewed on appeal for clear error. *Stevens (After Remand), supra* at 631. To the extent the court's ruling on a motion to suppress "involves an interpretation of the law or the application of a constitutional standard to uncontested facts," appellate review is de novo. *People v Attebury*, 463 Mich 662, 668; 624 NW2d 912 (2001).

Amendment questions by turning immediately to a consideration of the officers' *good faith. We have no reason to believe that our Fourth Amendment jurisprudence would suffer by allowing reviewing courts to exercise an informed discretion in making this choice.* [*Id.* at 925.]

B

Applying these principles to the case before us, we find that the officers conducting the search of defendant's home acted in good-faith reliance on the magistrate's determinations of probable cause and technical sufficiency with regard to the search warrants. The supporting affidavits were not " 'so lacking in indicia of probable cause' " that the officers could not objectively believe that the warrant was supported by probable cause. *Leon, supra* at 923 (citations omitted); *Goldston, supra* at 543. And there was no reason to believe the facts alleged in the affidavit were false or that the magistrate was misled by false information. *Leon, supra* at 923. Also, although there were no allegations in the affidavit that defendant had videotaped or taken pictures of the complainants, it did assert that the crimes happened in defendant's residence. Given the affiant's knowledge that pedophiles generally possess pornographic images for sexual gratification,[7] it was entirely reasonable to believe that evidence of a crime would be found in defendant's home, whether it be images taken of the complainants without their knowledge or possession of other material that would constitute child pornography. Michigan's probable-cause standard relates to whether "contraband or evidence of *a* crime will be found in a particular place." *Kazmierczak, supra* at 417-418 (emphasis added). It does not require that the

---

[7] *People v Darwich*, 226 Mich App 635, 639; 575 NW2d 44 (1997) (An affiant's representations based on his experience can be considered in determining whether probable cause exists.).

evidence sought be particular to the specific offense a defendant is alleged to have committed.

Nor are we convinced that the warrant was so facially deficient that it rendered the officers' reliance wholly unreasonable. The warrant described the items to be seized with sufficient particularity that it was reasonable for the officers to presume that the warrant was facially valid. *Leon, supra* at 923. Furthermore, there is no evidence to indicate that the issuing magistrate abandoned his judicial role. *Id.* Here, we can discern no reason to invoke the extreme sanction of exclusion. Accordingly, we hold that the good-faith exception to the exclusionary rule, as recently recognized in Michigan, is applicable in this case and, therefore, suppression of the evidence on the basis of an allegedly invalid search warrant is not appropriate.[8] Because we agree with the trial court's ultimate ruling denying defendant's motion to suppress evidence, we affirm its ruling albeit on different grounds.

In responding to the dissent, we note that this case is not so different from *Goldston* as the dissent suggests. In *Goldston*, the search warrant was technically deficient and lacked probable cause. The prosecutor conceded on appeal that the search warrant was not based on probable cause. *Id.* at 542 n 11. Despite both these problems, the *Goldston* Court nevertheless found that "[t]he police officers' reliance on the district judge's determination of probable cause and on the technical sufficiency of the search warrant was objectively reasonable." *Id.* at 542. Specifically, regarding probable cause, the Court stated that "the affidavit was not 'so

---

[8] We note that our ruling does not address whether the evidence requires suppression on other grounds. That is a separate issue that is not before us and may be raised by defendant before the trial court.

lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.' " *Id.* at 543 (citations omitted).

The dissent likens this case to one from the United States Court of Appeals for the Ninth Circuit, *United States v Weber*, 923 F2d 1338, 1346 (CA 9, 1990), in which the court found that the affidavit was so lacking probable cause that the good-faith exception did not apply. In *Weber*, the United States Customs Service sent the defendant a fake catalog of child pornography and he ordered four sets of pictures from it. In anticipation of the package's arrival, a customs agent filled out an affidavit in which he stated that the items to be searched for included the four sets of pictures sent to the defendant and all other child pornography. The court found that probable cause existed to search for the pictures the government sent, but there was no reason to believe that the defendant possessed additional pornography.

The defendant in *Weber* was targeted because two years earlier, a customs inspector had seized two pieces of advertising material addressed to "P. Webber" that he concluded *"apparently* depicted" child pornography. *Id.* at 1340 (emphasis in original). A notice of the seizure was sent to the defendant, who acknowledged the receipt of the notice. But the defendant never made any attempt to collect the materials, nor was it ever determined if the defendant had actually ordered the materials or if they were unsolicited advertisements.

Unlike in *Weber*, where the government had no reason to believe that the defendant possessed additional pornography, the police in this case had reason to believe that the defendant had a sexual interest in young girls because of the two separate complaints of sexual assault made just before the search warrant was

executed. Both complainants alleged that defendant had molested them in his home. Assuming that the reports were true, the police could reasonably infer that defendant was a pedophile. Our Supreme Court has recognized that "pornography is used in connection with child molestation, for arousal and fantasy and as a means of lowering the intended victim's inhibitions through peer pressure effects," *People v Russo*, 439 Mich 584, 600; 487 NW2d 698 (1992), that "the single most persuasive characteristic of pedophilia is the obsession for, and the collection of, child pornography," *id.* at 601, citing S Rep No 99-537, 99th Cong (2nd Sess), and that pornography of this type is likely to be kept in the home, *id.* at 612. Being a police officer for fifteen years, the affiant was aware of this connection, and we believe it to be inconsequential that the affiant had specific limited experience in investigating sexual assault crimes. Given that defendant was alleged to have sexually assaulted two young girls, and that those who do so usually possess child pornography in their home, a reasonable inference could be made that defendant would have child pornography in his home. Accordingly, we disagree with the dissent's evaluation of the affidavit and find that it was not so lacking in indicia of probable cause that official reliance on the magistrate's probable-cause determination was unreasonable. *Leon, supra* at 923.

Affirmed.

ZAHRA, J., concurred.

NEFF, P.J. (*dissenting*). I respectfully dissent. Contrary to the conclusion reached by the majority, I find that the facts of this case do not justify the application of the "good-faith" exception to the exclusionary rule as

recently adopted and explained by the Michigan Supreme Court in *People v Goldston*, 470 Mich 523; 682 NW2d 479 (2004).[1]

I agree with the majority's view of the legal principles underlying the good-faith exception, but disagree only with its application of those principles. The Supreme Court's decision in *Goldston* left unchanged the probable-cause standard and the various requirements for a valid warrant. *Ante* at 197, citing *United States v Leon*, 468 US 897; 104 S Ct 3405; 82 L Ed 2d 677 (1984). The majority decision all but "turns a blind eye" to these standards.

Although the *Goldston* decision has ushered in a new era in Michigan law, it is legal terrain well-traveled in federal law since the 1984 United States Supreme Court decision in *Leon*. My review of this case and examination of similar cases in which the courts have applied *Leon* leaves no doubt that the affidavit in this case was lacking in probable cause and that the nature of this deficiency rules out a good-faith exception. Accordingly, the trial court should have suppressed the evidence seized in the search of defendant's home.

I

Interpreting the Fourth Amendment of the United States Constitution, the *Leon* Court adopted a good-faith exception to the exclusionary rule as a remedy for unreasonable searches and seizures. "Under *Leon*, the exclusionary rule does not bar the admission of evidence seized in reasonable, good-faith reliance on a

---

[1] The prosecution did not raise the good-faith argument below in arguing the probable-cause issue and it was not addressed by the trial court. The prosecution raises the good-faith exception for the first time on appeal.

search warrant ultimately found to have been defective." *Goldston, supra* at 525-526.

The good-faith exception turns on objective reasonableness: whether the police officers' reliance on the magistrate's determination of probable cause and on the technical sufficiency of the search warrant was objectively reasonable. *Goldston, supra* at 531; see also *ante* at 198, quoting *Leon, supra* at 923-924. The focus with respect to the affidavit in this case is on probable cause. The standards to be applied are well settled.

"A search warrant may be issued only on a showing of probable cause that is supported by oath or affirmation." *People v Nunez,* 242 Mich App 610, 612; 619 NW2d 550 (2000); Const 1963, art 1, § 11. Probable cause exists when a reasonably cautious person would be justified in concluding that evidence of criminal activity could be found in a stated place to be searched. *Id.* A magistrate must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *People v Hawkins,* 468 Mich 488, 502 n 11; 668 NW2d 602 (2003), quoting *Illinois v Gates,* 462 US 213, 238; 103 S Ct 2317; 76 L Ed 2d 527 (1983). In reviewing a magistrate's decision regarding probable cause, this Court asks whether a reasonable magistrate could have found a " 'substantial basis' " to infer that the evidence sought would be found at the place to be searched. *People v Russo,* 439 Mich 584, 603-604; 487 NW2d 698 (1992), quoting *Gates, supra* at 236-238.

Evidence seized pursuant to an invalid search warrant may nonetheless be admissible if the government acted in good faith in relying on the magistrate's issuance of a warrant for the search. *Leon, supra* at 920-922; see also *ante* at 193; *Goldston, supra* at 530.

The inquiry is "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon, supra* at 923 n 23. Objective good faith is not manifested if an affidavit is " 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.' " *Ante* at 197, quoting *Leon, supra* at 923 (citation omitted). Nor is good faith manifested "if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." *Id.* at 923.

II

In this case, the affidavit was clearly so lacking in the indicia of probable cause that it rendered official belief in its existence entirely unreasonable. *Goldston, supra* at 531. Further, the averments with regard to the officer-affiant's experience and expert knowledge, relied on by the trial court, were irrelevant, and while not false per se, were certainly misleading.

A

The affidavit supplied by the officer-affiant, Detective Bergeron, to support the search warrant provided the following statements to establish probable cause:

3. The facts establishing probable cause or the grounds for search are:

a) On 03-05-03 Detective Bergeron received two different complaints (03-4435 and 03-4430) of a criminal sexual conduct against the suspect at 30018 Manhattan, St Clair Shores, Michigan, 48082.

b) Detective Bergeron has been a police officer for the past 15 years. He is currently assigned to the investigation bureau.

c) The named suspect is a resident of the address in question.

d) There are two different victim's [sic] claiming that they were both sexually assaulted by the same suspect.

e) The victim's [sic] are both neighbor's [sic] to the suspect and have been alone with him at 30018 Manhattan in the past.

f) The search of the above listed premises should help to further this investigation.

g) Based on my experince (sic) as a detective investigating sexual assaults it is known that this activity may also lead to the use of pornography for sexual gratification of the suspect.

h) It is aslo (sic) known that child sexual assaultive predators are known to have items of sexual gratification inside their homes, computers and other devices.

The objective shortform version of the facts in the affidavit is essentially: (1) the affiant received criminal sexual conduct complaints from two different persons against the suspect at 30018 Manhattan, where the suspect resides, and (2) the complainants are neighbors and have been alone with the suspect at 30018 Manhattan. These facts do not conceivably justify a *reasonably cautious* person in concluding that evidence of the pornographic material specified in the affidavit would be found at 30018 Manhattan.

In applying the good-faith exception, the majority places reliance on the experience and knowledge of Detective Bergeron, who signed the affidavit and participated in the search, to support the adequacy of the affidavit and the good faith of the concomitant reliance on the warrant. However, while a *magistrate* may consider an officer's experience in determining whether probable cause exists, *ante* at 199 n 7, the principles to be applied with respect to the good-faith exception are

altogether different. This Court's task in applying the good-faith exception rests on the *officer's* good-faith reliance on the warrant, not the magistrate's determination of probable cause. Properly viewed, Detective Bergeron's experience offers no support for applying the good faith-exception.

Detective Bergeron avers in the affidavit that he has fifteen years experience as *a police officer*; he is currently assigned to the investigation bureau, and his knowledge concerning the search warrant request is based on his experience as a detective investigating sexual assaults. In fact, Detective's Bergeron's experience was, by his own admissions, almost wholly lacking in any background that would support the claim that he was sufficiently knowledgeable about criminal sexual conduct involving children to reliably swear out the request for the search warrant.

Detective Bergeron testified at the suppression hearing that although he had been a policeman for a number of years, his duties included six months as an undercover officer in high schools, two years in traffic enforcement, eight years as an evidence technician, and four years as a detective. In his capacity as a detective he had investigated very few pedophile criminal sexual conduct cases, testifying about being involved in "A couple. I haven't done very many. . . . [M]y forte is more home invasion." He further testified about having investigated no case involving pedophilia in which he was the officer in charge and that he had "[v]ery little" training related to "children CSC [sic]." He was even uncertain whether some or all pornography is illegal to possess and testified that "I'm not the CSC expert."[2]

---

[2] At one point Officer Bergeron testified about his belief that all pornography used for sexual gratification is illegal to possess.

Therefore, when Detective Bergeron stated in the affidavit in support of his search warrant request that "g) Based on my experince (sic) as a detective *investigating sexual assaults* it is known that this activity may also lead to the use of pornography for sexual gratification of the suspect" (emphasis added) and "h) It is aslo (sic) known that child sexual assaultive predators are known to have items of sexual gratification inside their homes, computers and other devices," his statements were almost completely without substantive basis. Any reliance by this Court on Detective Bergeron's experience is completely unjustified in deciding the good-faith issue. Pursuant to *Leon, supra* at 923 n 24, we must review the objective reasonableness of the officers who obtained the warrant as well as those who executed it, so the reliance on Detective Bergeron's experience was particularly unjustified because he typed and signed the affidavit and participated in executing the warrant.[3]

The only remaining averment in the affidavit is that "the search of the above listed premises should help to further this investigation." A finding of probable cause

---

[3] The manner of the execution of this warrant, while not necessarily germane to the probable-cause issue, is also of concern to me. The affidavit signed by Detective Bergeron states that two complaints were received on March 5, 2003, the day before the warrant was issued. The search took place in the middle of the night, about 1 a.m., with "six or seven" officers participating. The defendant and his family were roused from bed and their home searched over the course of the next two or more hours. The only explanation for the execution of the warrant at that hour was that was when the "paperwork" was completed. There was no claim of a concern that evidence was in danger of destruction or being hidden. After all, as far as the officers knew, defendant did not even know he was a suspect in a criminal investigation and the officers were proceeding on mere speculation that there was some evidence of some crime to be found. Detective Bergeron stated that he intended to seize anything he could get his hands on that related to this case that could possibly have physical evidence to further the case. The seizure included personal computers allegedly belonging to defendant's two nineteen-year-old sons.

or good-faith reliance is not conceivably supported by a statement that the search "should help to further this investigation." Again, the relevant evidence at the suppression hearing supports a contrary finding.

There is no indication in the affidavit or elsewhere in this record that the complainants claimed that defendant photographed or videotaped them or showed them sexually suggestive materials or items. Detective Bergeron could not have harbored an objectively reasonable belief in the existence of probable cause in this case.

B

The circumstances in *Goldston* and those in this case are at opposite ends of the Fourth Amendment spectrum. In *Goldston*, the Supreme Court applied the good-faith exception to circumstances of a technical deficiency in the warrant resulting in an invalid warrant: the warrant failed to connect the place to be searched with the defendant and did not state the date that the police observed the defendant soliciting money. *Goldston, supra* at 527. In this case, the question is whether there was probable cause to issue the warrant.

This case more closely parallels *United States v Weber*, 923 F2d 1338, 1346 (CA 9, 1990), in which the United States Court of Appeals for the Ninth Circuit applied *Leon* to conclude that the warrant, obtained on the basis of foundationless expert testimony of pornography, lacked probable cause and did not justify application of the good-faith exception. In *Weber*, officers targeted the defendant for investigation of child pornography after he ordered four sets of pictures depicting children engaged in "sex action" as part of a reverse sting operation by law enforcement. *Id.* at 1340. The affiant-officer sought a warrant to search the defendant's home on the basis of the sting information, a

statement that a package of pornographic materials was sent to the defendant's house almost two years earlier, and a general description of the proclivities of pedophiles, which was based on the affiant-officer's experience and training in child pornography investigations and his discussion with other law enforcement agents. The affidavit contained a lengthy, several-page recitation of expert knowledge of another officer regarding "child molesters," "pedophiles," and "child pornography collectors." *Id.* at 1341. Of significance was the fact that nowhere in the affidavit was there even a conclusory recital that evidence of the defendant's interest in child pornography, evidenced by his picture order, placed him in the categories of pedophiles, molesters, and collectors discussed in the affidavit. The court concluded that the "expert" portion of the affidavit was not drafted with the facts of the case or the particular defendant in mind. *Id.* at 1345. Particularly relevant to this case, the court observed:

> It is well established that expert opinion may be presented in a search warrant affidavit. But if the government presents expert opinion about the behavior of a particular class of persons, for the opinion to have any relevance, the affidavit must lay a foundation which shows that the person subject to the search is a member of the class. [*Id.* (citation omitted).]

The *Weber* Court distinguished *United States v Rabe*, 848 F2d 994 (CA 9, 1988), another pornography case relying on expert opinion, on three grounds:

> First, in *Rabe* there was concrete evidence that the defendant had pornography in his home shortly before the warrant was executed. *Id.* [at 995.] Second, there was expert testimony in the affidavit which addressed the facts of the defendant's case and specifically concluded that based on those facts, the defendant was a pedophile. *Id.* at 996. Finally, not only did the expert review the defendant's

file, but there was enough information to make a judgment as to whether the defendant fit the profile of a "pedophile." The defendant's admitted collection of child pornography and his desire to take photographs were known to the expert and the magistrate before the warrant issued. [*Weber, supra* at 1345 -1346.]

In this case, as in *Weber*, there was absolutely nothing linking Detective Bergeron's claimed expertise to defendant or defendant's alleged criminal activity. Detective Bergeron's expertise, even if valid, was irrelevant to this case. As the court aptly concluded in *Weber, supra* at 1346:

> The foundationless expert testimony may have added fat to the affidavit, but certainly no muscle. Stripped of the fat, it was the kind of "bare bones" affidavit that is deficient under *Leon* [*supra* at 926]."

### III

The majority has deserted the context of *Goldston* and the good-faith exception to an invalid search warrant. In adopting the good-faith exception, the *Goldston* majority could not have intended to turn a blind eye to the principles on which the exception is based. Otherwise, the *Goldston* reasoning would be for naught.

In *Goldston*, the Supreme Court acknowledged the *Leon* Court's recognition that application of the good-faith rule was not without limitation. *Goldston, supra* at 550. In this regard, the *Leon* Court stated that it was not suggesting that "exclusion is always inappropriate" where an officer obtains and relies on a warrant. *Leon, supra* at 922. Accordingly, suppression remains an appropriate remedy if an officer fails to manifest good faith and "relies on a warrant based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Goldston,*

*supra* at 531, quoting *Leon, supra* at 923 (citation and quotation marks omitted). The affidavit in this case contains an entirely superficial recitation of probable cause, and "a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon, supra* at 923 n 23.

The majority decision violates the purpose of the good-faith exception and is contrary to long-established precedent for its application. The decision turns the good-faith exception into a carte blanche exception to an invalid search warrant, as long as the affidavit contains some "fat." Under the majority's reasoning and contrary to *Leon*, the magistrate and the courts become nothing more than a rubber stamp for the police. The majority decision eviscerates any necessary foundation for applying the good-faith exception because no reasoned application remains. For these reasons, I would reverse.

IV

The majority response to the dissent misses the point. Statistical inference *alone* cannot be a basis of probable cause. There must be some connection to the suspect. That is the point in *Weber*. The expert information in the affidavit must relate to the criminal suspect. If pedophilia is alleged, there must be evidence of pedophilia. If child pornography is alleged, there must be evidence of child pornography.

This case involves *no* allegations of *any* conduct involving child pornography or pedophilia. See *Russo, supra* at 599 n 24 (defining "pedophile"). So the quotations from *Russo* are irrelevant. That pedophilia or child pornography activity was involved in *Russo*, was a foregone conclusion. The affidavit contained ample allegations of such activity:

[T]he victim reported that, while between the ages of five and ten years old, she had been sexually abused by the defendant at his home every other weekend over a four-year period, beginning in the fall of 1978 and ending in August, 1982; the *victim described being photographed by the defendant* "*naked* or in various stages of undress" and having been *videotaped alone or with the defendant involved in sexual activity*; and she reported *being shown the photographs and videotapes* numerous times by the defendant during her visits to his home, and that she was familiar with the different locations *within the home where the defendant stored the material* and his method of securing the *piles of photographic material* with "string or rubber bands." [*Russo, supra* at 598 (emphasis added).]

The key issue in *Russo* was the staleness of that information. Unlike the majority in this case, the Supreme Court was careful to state what *Russo* did not stand for:

This is not a situation in which the government claims that simply because a person has indicated interest in possessing pornographic material he is likely to be in present possession of it. *United States v Weber,* 915 F2d 1282 (CA 9, 1990). Nor is this a situation in which the government seeks a search warrant on the basis of a single incident of photographing child victims. *State v Woodcock* [407 NW2d 603 (Iowa, 1987)]. Most importantly, this is not a situation in which the government claims the right to invade the sanctity of the home on the basis of a profile that suggests: once a collector of child pornography, always a possessor. *Washington v Smith,* 60 Wash App 592; 805 P2d 256 (1991), lv den 116 Wash 2d 1031 [813 P2d 582] (1991).

We hold only that where suspicion of criminal activity has focused on a specific individual by a standard more probable than not, and it is alleged that the evidence sought was created, retained, and employed in ongoing criminal activity over a four-year period, the magistrate could reasonably conclude that there was a "fair probabil-

ity" that the evidence would be retained in the residence of the accused. [*Russo, supra* at 613-614.]

The majority's use of quotations from *Russo* to establish probable cause in this case amounts to a profile search, clearly not sanctioned by the *Russo* Court.