# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
May 14, 2015

Plaintiff-Appellee,

v

No. 319343
Saginaw Circuit Court

LEDELL MARVIN MUSHATT,

LC No. 12-036859-FC

Defendant-Appellant.

Before: JANSEN, P.J., and METER and BECKERING, JJ.

PER CURIAM.

Defendant was convicted of four counts breaking and entering, MCL 750.110, stealing from a bank, safe, vault, or other depository, MCL 750.531, and assaulting, battering, wounding, resisting, obstructing, opposing, or endangering a person performing his or her duties, MCL 750.81d(1) following a jury trial. Defendant was sentenced to 10 to 20 years' imprisonment on each of the breaking and entering and stealing from a bank, safe, vault, or other depository convictions, and two to 15 years' imprisonment on the assaulting, battering, wounding, resisting, obstructing, opposing, or endangering a person performing his or her duties conviction. Defendant appeals as of right and we affirm.

This case involves four incidents of breaking and entering that occurred at the following three locations in Saginaw, Michigan: 5060 State Street on June 21, 2011; 865 Midland Road on September 28, 2011; and 138 Harrow Lane on October 1, 2011 (twice). Following defendant's arrest, Saginaw Township Police Detective Mindy Worden obtained a search warrant for 5123 Mill Wheel Drive in Grand Blanc, Michigan, the purported address of defendant's girlfriend Linda Hairston. When the police arrived at Mill Wheel Drive to execute the search warrant, they discovered the home was vacant and did not match the description presented in the warrant. They did not search the premises. Following additional investigation, Worden learned defendant and his girlfriend recently resided at 11309 Grand Oak Drive in Grand Blanc, because on September 5, 2011, the Grand Blanc Police reported a domestic dispute at that address between defendant and Hairston. Worden submitted an amended affidavit and the magistrate approved a new search warrant for 11309 Grand Oak Drive. Upon searching the premises, the police obtained, among other things, a pair of dress shoes that were submitted for comparison to a footprint found at 865 Midland Road. Defendant later moved to suppress the evidence and the trial court denied his motion.

At defendant's trial, Saginaw Township Police Officer Russell Uphold testified that he chased the suspect from the scene of the 138 Harrow Lane breaking and entering and saw his face from a distance of 8 to 10 feet before the individual escaped into an adjacent neighborhood. Uphold testified that he recognized the suspect's face, but was unable to put a name to him. Sometime later, Uphold discovered a green Cadillac near 138 Harrow Lane, and a LIEN search revealed the vehicle was registered to a person with the last name of Mushatt. Uphold testified that he recognized the name "Mushatt," remembered the name "Ledell Mushatt," and believed he could identify the suspect fleeing the scene. Uphold testified that he pulled up the name Ledell Mushatt on the Offender Tracking Information System (OTIS), and after seeing a photograph, knew "without a doubt" that the fleeing suspect was defendant.

Prior to trial, defendant filed a motion to remove his attorney, arguing that his counsel had not filed any of the "several motions" he requested including a "motion to reconsider an interlocutory appeal" filed with this Court, and "several motions for arraignment violations." Following a motion hearing, the court denied defendant's motion.

At the beginning of the trial proceedings, defendant raised several motions *in propria persona*. Defendant moved to suppress his identification, arguing that Uphold's use of OTIS to obtain his photograph and Uphold's confirmation of defendant's identity while he was under arrest was improper. The court denied the motion. Defendant moved to suppress photographs taken of the interior of the green Cadillac, which the court also denied. Defendant also moved to strike any statements pertaining to his criminal history. The court excluded evidence of other breakings and entering in the area to demonstrate defendant had employed a common plan, scheme, or intent.

## I. SUBSTITUTION OF COUNSEL

Defendant first contends that his attorney's decision not to file certain pretrial motions constituted a conflict regarding a fundamental trial tactic, which required the lower court to appoint him new counsel. This Court reviews a trial court's decision regarding substitution of counsel for an abuse of discretion. *People v Mack*, 190 Mich App 7, 14; 475 NW2d 830 (1991). "An abuse of discretion occurs . . . when the trial court chooses an outcome falling outside th[e] principles range of outcomes." *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003).

An indigent defendant is guaranteed the right to assistance of counsel, but this right does not entitle a defendant to choose any attorney by merely " 'requesting that the attorney originally appointed be replaced.' " *People v Traylor*, 245 Mich App 460, 462; 628 NW2d 120, lv den 465 Mich 914 (2001), quoting *Mack*, 190 Mich App at 14. Rather, appointment of substitute counsel is only warranted "upon a showing of good cause and where substitution will not unreasonably disrupt the judicial process." *Mack*, 190 Mich App at 14. "Good cause exists where a legitimate difference of opinion develops between a defendant and his appointed counsel with regard to a fundamental trial tactic." *Id.*

"The decision whether and when to make a motion are matters of trial strategy and professional judgment that are entrusted to a defendant's trial counsel." *People v Rose*, 289 Mich App 499, 527; 808 NW2d 301 (2010). Accordingly, because an attorney's "decision not to file . . . motions clearly falls within the categories of professional judgment and trial strategy that

are matters entrusted to the attorney," an attorney's refusal to file motions does not require new counsel. *Traylor*, 245 Mich App at 463. The record is unclear regarding whether the motions raised by defendant *in propria persona* at trial were the pretrial motions he asked his attorney to raise. However, regardless of whether defendant asked his attorney to file the motions and regardless of the success of the motions, because a decision to file motions is a matter of trial strategy and professional judgment, defendant was not entitled to the appointment of new counsel on this account. *Id.*

Defendant next argues that the lower court did not adequately consider his motion to remove counsel because it did not allow defendant's attorney to respond to his arguments before denying his motion. Generally, "[w]hen a defendant asserts that the defendant's assigned attorney is not adequate or diligent, or is disinterested, the trial court should hear the defendant's claim and, if there is a factual dispute, take testimony and state its findings and conclusion on the record." *People v Strickland*, 293 Mich App 393, 397; 810 NW2d 660 (2011) (citation and internal quotation marks omitted). In this case, the court received defendant's motion to appoint new counsel and held a motion hearing to permit defendant to articulate his concerns. Defendant stated his position on the matter, and concluded by asking the court to assign him a new attorney. Because the court was aware of defendant's argument and provided him an opportunity to voice his concerns in any way he saw fit, the court's investigation on the matter was sufficient. *Id.* (explaining that when the trial court is "aware of [a defendant's] complaints regarding appointed counsel" and provides an opportunity for the defendant to "say whatever he wants to say," the court has adequately inquired into the breakdown of the attorney-client relationship).

## II. THE 11309 SEARCH WARRANT

Defendant argues the lower court abused its discretion in approving a warrant for 11309 Grand Oak Drive, and thus erred in refusing to suppress evidence found therein because the warrant was not based on probable cause. "[A]ppellate scrutiny of a magistrate's decision [to issue a warrant] involves neither de novo review nor application of an abuse of discretion standard . . . [but] requires the reviewing court to ask only whether a reasonably cautious person could have concluded that there was a 'substantial basis' for the finding of probable cause." *People v Whitfield*, 461 Mich 441, 445-446; 607 NW2d 61 (2000) (citations omitted). The Court's factual findings made in deciding whether to grant a motion to suppress evidence are reviewed for clear error. *People v Head*, 211 Mich App 205, 209; 535 NW2d 563 (1995). A finding is clearly erroneous if "although there is evidence to support it, [this Court is] left with a definite and firm conviction that a mistake has been made." *People v Muro*, 197 Mich App 745, 747; 496 NW2d 401 (1993). This Court reviews de novo a trial court's ultimate decision regarding whether to grant a motion to suppress. *People v Goforth*, 222 Mich App 306, 310; 564 NW2d 526 (1997).

It is well established that the United States Constitution and the Michigan Constitution guarantee the right of persons against unreasonable searches and seizures. *People v Hellstrom*, 264 Mich App 187, 192; 690 NW2d 293 (2004). "A search or seizure is considered unreasonable when it is conducted pursuant to an invalid warrant." *Id.* Generally, a valid search warrant must be based upon probable cause. *Id.* Probable cause exists if "a person of reasonable caution would conclude that contraband or evidence of criminal conduct will be found in the place to be searched." *People v Darwich*, 226 Mich App 635, 637; 575 NW2d 44 (1997).

This Court evaluates search warrants and their underlying affidavits in a common-sense and realistic manner. *People v Poole*, 218 Mich App 702, 705; 555 NW2d 485 (1996). Issuance of a search warrant is appropriate if "a reasonably cautious person could have concluded, under the totality of the circumstances, that there was a 'substantial basis' for the magistrate's finding of probable cause." *People v Russo*, 439 Mich 584, 603; 487 NW2d 698 (1992). When a warrant is properly based on probable cause, evidence seized pursuant to that warrant is generally admissible as substantive evidence in related criminal proceedings. *Hellstrom*, 264 Mich App at 193.

In this case, Worden executed the affidavit accompanying the search warrant. Her affidavit stated that: (1) Uphold identified defendant as the suspect he chased from the 138 Harrow Lane breaking and entering; (2) defendant and his brother were apprehended after they approached a green Cadillac left at the scene then sped away at a high rate of speed (; (3) defendant's brother informed police that defendant frequently stayed with his girlfriend Linda Hariston in Grand Blanc; (4) Brooks performed a search of a cell phone seized from the green Cadillac near the 138 Harrow Lane incident and found a phone number for Hairston; (5) police then cross-referenced the phone number for Hairston and retrieved an address of 5123 Mill Wheel Drive in Grand Blanc; (6) when the police arrived at 5123 Mill Wheel Drive, they discovered the home was vacant; (7) after performing additional "Accurint" searches, police confirmed that Hairston used the address 11309 Grand Oak Drive, Apartment 3 "as recently as 9-5-11 when Grand Blanc Police Dep[artment] responded for a domestic dispute between Linda and Ledell Mushatt." The assertions are in keeping with the record.

The affidavit identified defendant as the perpetrator of a breaking and entering and confirmed that defendant recently lived at 11309 Grand Oak Drive. Although the affidavit did not expressly state that a burglar often keeps evidence of his or her criminal activities in the places he or she resides a "magistrate . . . [is] free to make . . . logical inference[s] on his own." *People v Nunez*, 242 Mich App 610, 615; 619 NW2d 550 (2000). Under the totality of the circumstances, a reasonably cautious magistrate could conclude that these facts represented a substantial basis for finding probable cause. Accordingly, the evidence seized at 11309 Grand Oak Drive was permissible used as substantive evidence a defendant's trial.

### III. PROSECUTORIAL MISCONDUCT

Defendant argues that the prosecutor elicited unfairly prejudicial testimony from Uphold, who stated that he identified defendant by looking up his name and photograph on OTIS. Because defendant failed to preserve this issue below, we review it for plain error affecting substantial rights. *People v Leshaj*, 249 Mich App 417, 419; 641 NW2d 872 (2002). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

This Court examines all alleged prosecutorial misconduct in context to determine whether the defendant was denied a fair and impartial trial. *Leshaj*, 249 Mich App at 419. A prosecutor is free to offer admissible evidence and to argue all reasonable inferences arising from the evidence in a manner related to the prosecutor's theory of the case. *People v Goodin*, 257 Mich App 425, 433; 668 NW2d 392 (2003). When a claim of prosecutorial misconduct

implicates an evidentiary issue this Court "focus[es] on whether the prosecutor elicited the testimony in good faith." *People v Dobek*, 274 Mich App 58, 71; 732 NW2d 546 (2007). A prosecutor's good-faith effort to elicit testimonial evidence does not constitute misconduct. *People v Noble*, 238 Mich App 647, 660; 608 NW2d 123 (1999). A defendant cannot demonstrate that a prosecutor's introduction of evidence was in bad-faith if the evidence is "arguably admissible." *Dobek*, 274 Mich App at 70.

Generally, evidence of other crimes, wrongs, or acts of a defendant is inadmissible to prove a defendant had a propensity to commit such acts. *People v Crawford*, 458 Mich 376, 383; 582 NW2d 785 (1998); MRE 404(b). However, under MRE 404(b), such evidence may be admissible "for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material." "Evidence relevant to a noncharacter purpose is *admissible* under MRE 404(b) *even if* it also reflects on a defendant's character." *People v Mardlin*, 487 Mich 609, 615; 790 NW2d 607 (2010) (emphasis in original). Likewise, evidence is inadmissible only if it relates solely to the defendant's criminal propensity or character. *Id.* at 616.

In determining whether evidence is admissible under MRE 404(b), this Court employs the following test:

> First, that the evidence be offered for a proper purpose under Rule 404(b); second, that it be relevant under Rule 402 as enforced through Rule 104(b); third, that the probative value of the evidence is not substantially outweighed by unfair prejudice; fourth, that the trial court may, upon request, provide a limiting instruction to the jury. . . . [*People v VanderVliet*, 444 Mich 52, 55; 508 NW2d 114 (1993), amended on other grounds 445 Mich 1205 (1994).]

The prosecutor introduced Uphold's testimony and references to finding defendant's picture on OTIS for the purpose of explaining Uphold's process of identifying the suspect at the 138 Harrow Lane incident. Accordingly, the prosecutor offered Uphold's testimony for a permissible purpose under MRE 404(b).

Regarding the second inquiry, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. In this case, a fact of contention throughout the trial was whether defendant was the suspect who fled the 138 Harrow Lane scene. Uphold's testimony that he found defendant's photograph on OTIS explained his process of remembering defendant's face at the scene, then used defendant's photograph on OTIS to confirm that defendant was the suspect. Uphold's testimonial references to OTIS established a foundation for his identification of the suspect at the 138 Harrow Lane incident, and therefore tended to establish a fact of consequence to the determination of the action.

MRE 403 provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . . Admission of evidence is unfairly prejudicial when "there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury." *Crawford*, 458 Mich at 398. However, the prosecution need not use the least prejudicial evidence to present its case. *People v Fisher*, 449

Mich 441, 452; 537 NW2d 577 (1995). Evidence will not be barred under MRE 403 unless it "stir[s] such passion as to divert the jury from rational consideration of [the defendant's] guilt or innocence of the charged offenses." *People v Cameron*, 291 Mich App 599, 611-612; 806 NW2d 371 (2011).

If viewed in isolation, Uphold's references to finding defendant's photograph on OTIS could be perceived as being "marginally probative evidence" because Uphold could have testified that he found defendant's photograph through a public database without identifying OTIS. However, a prosecutor need not provide the least prejudicial evidence to make its case. *Fisher*, 449 Mich at 452. Moreover, when viewed in the broader context of Uphold's testimony, Uphold's references to OTIS provided a clear and complete picture of his investigative process of identifying defendant. Because defendant's identity as the suspect was in contention throughout the proceedings, and Uphold was the only witness who definitively identified defendant, Uphold's testimony was not marginally probative.

Further, the probative value of Uphold's testimony likely outweighed any prejudicial effect. The prosecutor and Uphold did not identify OTIS as a criminal history database. Only jurors who were familiar with OTIS would understand defendant's photograph in the database indicated he had previously been incarcerated. Likewise, neither the prosecutor nor Uphold identified any of the specific crimes defendant committed. Although there could be some prejudice associated with Uphold's brief reference to OTIS, because defendant's identity as the 138 Harrow Lane suspect was integral to the prosecutor's case, the evidence was admissible.

Finally, defendant argues that his counsel was ineffective for failing to object during trial to Uphold's testimony that he used OTIS to confirm defendant's identity. However, defendant himself raised a pretrial objection to Uphold's testimonial references to finding defendant's photograph on OTIS and the court denied defendant's request to preclude the testimony. An additional objection would have been pointless.

Affirmed.


/s/ Kathleen Jansen
/s/ Patrick M. Meter
/s/ Jane M. Beckering