*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

CHRISTOPHER MICHAEL THOMSON,

Defendant-Appellant.

UNPUBLISHED
April 28, 2025
9:57 AM

No. 371943
Wayne Circuit Court
LC No. 23-006272-01-FH

Before: RIORDAN, P.J., and O'BRIEN and GARRETT, JJ.

GARRETT, J. (*dissenting*).

I disagree with the majority that the search warrant affidavit established probable cause to search defendant's residence, which led to the recovery of the firearms-related evidence. The affidavit failed to connect the items sought with any criminal activity justifying the search. For the same reason, I disagree with the majority's determination that the good-faith exception to the exclusionary rule applies. I would hold that the good-faith exception does not apply and reverse the trial court's decision denying defendant's motion to suppress the evidence.

## I. BRIEF SUMMARY OF PERTINENT FACTS[1]

Police officers responded to the home of defendant, Christopher Michael Thomson, after his wife telephoned for assistance. Thomson refused to let the officers inside the home and told them to leave. When a sergeant attempted to knock on a window, Thomson "brandished" a pistol. The affidavit includes a still shot from the sergeant's body camera, but the still shot merely depicts a window, and nothing inside the residence is visible from the photograph. The officers evacuated Thomson's wife and her children from the home through a basement window. She told the officers that Thomson head-butted her and that he owned multiple firearms that were inside the home. Detective Matthew Lyles conducted a LEIN search, which revealed that 35 firearms were registered to Thomson. The affidavit further stated that Detective Lyles believed that "a search of

---

[1] Because neither the district court nor the circuit court conducted a hearing at which evidence was admitted, the facts are derived solely from the search warrant affidavit.

the residence will yield multiple firearms and further evidence that would assist the investigation." Based on that information, the district court issued the search warrant.

## II. ANALYSIS

Before issuing a search warrant, the magistrate must determine, based on the search warrant affidavit, that there is probable cause to believe "that contraband or evidence of a crime will be found in a particular place." *Illinois v Gates*, 462 US 213, 238; 103 S Ct 2317; 76 L Ed 2d 527 (1983). "The Fourth Amendment requires that search warrants 'particularly describ[e] the place to be searched, and the persons or things to be seized.' " *People v Hughes*, 506 Mich 512, 538; 958 NW2d 98 (2020), quoting US Const, Am IV (brackets in *Hughes*). "A search warrant thus must state with particularity not only the items to be searched and seized, but also the alleged criminal activity justifying the warrant." *Id*. "That is, some context must be supplied by the affidavit and warrant that connects the particularized descriptions of the venue to be searched and the objects to be seized with the criminal behavior that is suspected . . . ." *Id*.

The affidavit identified Thomson's suspected criminal behavior as a domestic assault of his wife and stated that Thomson head-butted her. It described the items to be searched for and seized as follows:

> Any/All firearms, ammunition, firearm accessories, and all other firearm related objects. Any/All electronic devices, including but not limited to cell phones, laptops, devices that hold data (computers) or any other communication devices. Any/All other items that provide further evidence of the domestic assault between the suspect and complainant. Any/All proof of residency.

Because the affidavit did not indicate that Thomson committed any criminal behavior that involved a firearm, probable cause did not exist to search for the firearms and firearms-related items. The domestic assault did not involve firearms and, although the affidavit stated that Thomson "brandished" a pistol when a sergeant saw Thomson through the window, the affidavit did not indicate that Thomson pointed the pistol at the sergeant. It is unclear from the affidavit what Detective Lyles meant by the term "brandished," but, notably, the prosecutor did not charge Thomson with committing a firearms-related offense against the officers.

Further, the prosecutor did not charge Thomson with committing a firearms-related offense against his wife. Although the affidavit sought a warrant to search for any and all "items that provide further evidence of the domestic assault between the suspect and complainant," the affidavit described the assault as a head-butting incident. Therefore, a search would not have yielded any relevant firearms evidence involving the domestic assault. While the majority posits that the fact that Thomson had a gun in his hand supports the conclusion that he used the gun to falsely imprison his wife, the affidavit did not state that he did so and the prosecutor did not charge him with doing so. Thomson's wife told the officers that Thomson head-butted her. The affidavit did not state that she told them that Thomson threatened her with a gun or that he used a gun to prevent her from leaving the home. In addition, the sergeant saw Thomson with a gun through a first-story window, and Thomson's wife and her children were evacuated through a basement window. Nothing indicates that Thomson's wife saw him holding the gun at any time before she left the home.

Moreover, although Thomson's wife told the officers that Thomson owned multiple firearms that were inside the home, Detective Lyles conducted a LEIN check and discovered that 35 firearms were registered to Thomson. Thus, Detective Lyles discovered that Thomson lawfully owned 35 firearms, none of which Thomson's wife told the officers was involved in the incident. Because the affidavit failed to connect the firearms and firearms-related items with the suspected criminal activity, I would affirm the trial court's determination that probable cause did not support the warrant.

I also disagree with the majority that the good-faith exception to the exclusionary rule applies in this case. "The 'good-faith' exception renders evidence seized pursuant to an invalid search warrant admissible as substantive evidence in criminal proceedings where the police acted in reasonable reliance on a presumptively valid search warrant that was later declared invalid." *People v Hellstrom*, 264 Mich App 187, 193; 690 NW2d 293 (2004), quoting *United States v Leon*, 468 US 897, 905; 104 S Ct 3405; 82 L Ed 2d 677 (1984). A police officer does not act in objective good faith by "relying on a warrant based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 US at 923 (quotation marks and citation omitted).

In this case, the affidavit was so lacking in probable cause that belief in its existence was unreasonable. As previously stated, the affidavit sought evidence involving the domestic assault between Thomson and his wife, but the assault did not involve a firearm. In fact, because the assault involved a head-butting, it did not involve any object that the police could search for and seize. Further, there were no allegations that Thomson used firearms to commit a crime. Also as previously stated, although the affidavit indicated that Thomson "brandished" a pistol, the affidavit did not state that the police sought firearms-related evidence in relation to the "brandishing," and nothing indicates that the "brandishing" constituted a crime.

What is evident from the search warrant affidavit is that the police sought to search Thomson's home in an apparent effort to locate evidence pertaining to the head-butting, but the affidavit, and the search warrant that followed, allowed the officers to search for and seize firearms-related evidence. No reasonable officer could have concluded that there existed probable cause to search for and seize firearms-related evidence when the offense being investigated involved a head-butting. Nevertheless, after Thomson came out of the house and surrendered to officers, Detective Lyles prepared the search warrant affidavit seeking to search Thomson's home for "firearms, ammunition, firearm accessories, and all other firearm related objects" notwithstanding that the crime being investigated did not involve a firearm and notwithstanding Detective Lyles's knowledge that Thomson legally owned 35 firearms. Thus, the search appeared to "take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Maryland v Garrison*, 480 US 79, 84; 107 S Ct 1013; 94 L Ed 2d 72 (1987). Because the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," see *Leon*, 468 US at 923 (quotation marks and citation omitted), I would hold that the good-faith exception to the exclusionary rule does not apply. Accordingly, I would reverse the trial court's order denying Thomson's motion to suppress the evidence.

/s/ Kristina Robinson Garrett