# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MARCUS SHEPHERD, a/k/a MARCUS
SHEPARD,

Defendant-Appellant.

UNPUBLISHED
July 16, 2015

No. 321229
Calhoun Circuit Court
LC No. 2013-002145-FH

Before: O'CONNELL, P.J., and OWENS and M. J. KELLY, JJ.

PER CURIAM.

Defendant, Marcus Shepherd, appeals by right his jury conviction of operating or maintaining a laboratory involving methamphetamine. See MCL 333.7401c(1). The trial court sentenced Shepherd as a fourth-offense habitual offender, MCL 769.12, to serve ten to 20 years in prison. Because we conclude there were no errors warranting relief, we affirm.

## I. BASIC FACTS

In March 2013, Daniel Sullivan, who worked as a loss prevention detective at a grocery store, saw Shepherd purchase a bottle of liquor, lithium batteries, and Zippo lighter fluid. Sullivan also saw him walk down the aisle where cleaning products were located. After leaving, Shepherd proceeded to "a very gold or tannish-colored" "Ford Taurus or a Mercury Sable." From his training and experience, Sullivan recognized that Shepherd had purchased products that were the "major components involving the manufacture of methamphetamine." He contacted the Calhoun County Sheriff's Department and spoke with Deputy Tyler Paesens.

After Paesens reviewed the store's surveillance footage, he asked Deputy Jonathan Pignataro to draft a warrant for the search of Shepherd's residence. The warrant was signed, and several officers executed it later that evening. Inside the residence, the officers found: "a can of Morton salt on the coffee table"; lithium batteries still in the bag; lithium strips; "[a] tool commonly used for the tightening or . . . loosening of the cap on the reaction vessel"; a "glass plate"; tubing; a torch; a "cut open" "cold pack"; a backpack with "fertilizer prills or ammonium sulfate"; a digital scale; "open blister packs of which once contained pseudoephedrine; "suspected methamphetamine residue" on the coffee table; an ash tray with "suspected methamphetamine"; "a hypodermic needle"; "a plastic pill bottle with a label removed and a white powdery substance believed to [be] methamphetamine"; "a 'tooter', which is common for

-1-

snorting narcotics, specifically methamphetamine"; and "a reaction vessel, which was actively reacting or bubbling." Paesens and Pignataro testified that the reaction vessel presented a substantial danger to everyone inside the residence. They both testified that the reaction vessel was placed in a holding bucket and turned over to the DEA to be destroyed.

On the basis of this and other evidence, the jury convicted Shepherd of operating or maintaining a methamphetamine laboratory.

## II. THE SEARCH WARRANT

### A. STANDARDS OF REVIEW

Shepherd first argues that the warrant for the search of his residence was deficient; specifically, he contends that it was not founded on probable cause. Because the warrant was invalid, his trial lawyer's failure to challenge it amounted to ineffective assistance of counsel. When, as here, the trial court has not conducted an evidentiary hearing on a claim of ineffective assistance, there are no factual findings to which this Court must defer; accordingly, this Court reviews the record alone to determine as a matter of law whether the defendant's trial lawyer's acts or omissions fell below an objective standard of reasonableness under prevailing professional norms and prejudiced the defendant's trial. *People v Gioglio (On Remand)*, 296 Mich App 12, 19-20; 815 NW2d 589 (2012), remanded for resentencing 493 Mich 864. To the extent that this issue involves determining whether the warrant was founded on probable cause, this Court reviews de novo the proper application of the constitutional standard to the uncontested facts. *People v Martin*, 271 Mich App 280, 297; 721 NW2d 815 (2006).

### B. ANALYSIS

"[B]oth the United States Constitution and the Michigan Constitution 'guarantee the right of persons to be secure against unreasonable searches and seizures.' " *People v Hellstrom*, 264 Mich App 187, 192; 690 NW2d 293 (2004) (citation omitted). "A search warrant may only be issued upon a showing of probable cause. Probable cause for issuance of a search warrant exists if there is a substantial basis for inferring a fair probability that contraband or evidence of a crime exists in the location to be searched." *People v Malone*, 287 Mich App 648, 663; 792 NW2d 7 (2010) (citations omitted). "Because of the strong preference for searches conducted pursuant to a search warrant, a magistrate's decision regarding probable cause should be paid great deference." *Martin*, 271 Mich App at 297. The reviewing court must "insure that there is a substantial basis for the magistrate's conclusion that there is a fair probability that contraband or evidence of a crime will be found in a particular place." *People v Stumpf*, 196 Mich App 218, 220; 492 NW2d 795 (1992). In determining whether there is a substantial basis for the magistrate's conclusion, this Court must read the warrant and underlying affidavit in a commonsense and realistic manner. *Martin*, 271 Mich App at 298.

Shepherd contends on appeal that "the purchase of Zippo lighter fluid and lithium batteries should not have been enough to establish probable cause" because "[t]hese relatively innocuous items provided nothing more than a speculative hunch" "based upon . . . flimsy informant evidence." However, the statements concerning Shepherd's purchases were not the only statements in support of the warrant.

In his eight-page affidavit, Pignataro described how he had "11 years of experience," "was previously assigned as a Narcotics Detective with the Michigan State Police South West Enforcement Team," had "specialized training" involving "illegal drug activity" and "methamphetamine labs and their components," has testified as an expert in the area of methamphetamine manufacturing," and been involved in numerous methamphetamine-related investigations. He not only described Shepherd's actions in the grocery store, which he confirmed by reviewing the store's security footage, but also stated that Shepherd had been observed "purchasing several known methamphetamine components on various occasions" by Sullivan, and that Shepherd had purchased lithium batteries, lye, and Zippo fluid from a grocery store on a different date. He further explained that a search warrant was also issued in relation to the earlier observations and an active methamphetamine laboratory was found in Shepherd's residence on that occasion. He further averred that Shepherd had been " 'blocked' from purchasing pseudoephedrine products . . . at Kmart . . . for excessive attempts to purchase pseudoephedrine products." Finally, he stated that a recent felony arrest warrant had been issued against Shepherd for operating or maintaining a methamphetamine laboratory in the presence of a minor.

Examining these averments, a person of reasonable caution could conclude that contraband or evidence of criminal conduct related to the manufacture of methamphetamine might be found at Shepherd's residence. *Id.* Consequently, the warrant was properly supported by probable cause. Because the warrant was properly supported, Shepherd's trial lawyer cannot be faulted for failing to challenge it on that basis. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

## III. *BRADY* VIOLATION

### A. STANDARD OF REVIEW

Shepherd next argues that the government deprived him of his right to present a defense by destroying the reaction vessel discovered in the search of his residence. Because Shepherd did not raise this claim of error before the trial court, our review is for plain error affecting his substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

### B. ANALYSIS

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v Maryland*, 373 US 83, 87; 83 S Ct 1194; 10 L Ed 2d 215 (1963). "[T]he components of a 'true *Brady* violation,' are that: (1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) that is material." *People v Chenault*, 495 Mich 142, 150; 845 NW2d 731 (2014). "Evidence is favorable to the defense when it is either exculpatory or impeaching." *Id.* Evidence is material to the defense when "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v Bagley*, 473 US 667, 682; 105 S Ct 3375; 87 L Ed 2d 481 (1985). This standard does not require the defense to demonstrate that disclosure of the suppressed evidence would have resulted in acquittal by a preponderance of the evidence; rather, it requires the defense to demonstrate that, in the absence

of the suppressed evidence, the defendant did not receive a fair trial. *Chenault*, 495 Mich at 150-151. The government is responsible for evidence within its control. *Id.* at 150.

There is no dispute that the government destroyed the reaction vessel. However, Shepherd has not shown that the reaction vessel would have provided favorable evidence. He merely speculates that "this 'reaction vessel' could be nothing more than a high school experiment." Admittedly, as Shepherd argues, "[o]nce [the evidence] was destroyed, its 'potentially exculpatory' nature was forever lost." Nonetheless, he offers nothing to show even the possibility that the suppressed evidence would have been exculpatory or impeaching in nature; given the evidence concerning the circumstances under which the reaction vessel was seized, it is more likely that it would have been inculpatory. For this reason, Shepherd cannot show that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bagley*, 473 US at 682. Indeed, whether methamphetamine components were in the reaction vessel was not outcome determinative. In order to find Shepherd guilty, the prosecution had to prove beyond a reasonable doubt that Shepherd "[p]rovide[d] any chemical or laboratory equipment to another person knowing or having reason to know what the other person intends to use that chemical or laboratory equipment for the purpose of manufacturing a controlled substance . . . ." MCL 333.7401c(1)(c). Although establishing that methamphetamine was in the reaction vessel would support an inference that Shepherd knew or had reason to know controlled substances were being manufactured, the actual presence of methamphetamine was not required.

Shepherd failed to establish plain error warranting relief.

IV. SENTENCING ERROR

Finally, Shepherd argues that the trial court erred when it scored offense variable (OV) 14 at ten points. This Court reviews a trial court's factual findings at sentencing for clear error, but reviews de novo whether the trial court properly interpreted and applied the sentencing guidelines to the facts. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013).

Under MCL 777.44(1)(a), the trial court must score OV 14 at ten points if "[t]he offender was a leader in a multiple offender situation." If he was not a leader, then the court must score OV 14 at zero points. MCL 777.44(1)(b). "The entire criminal transaction should be considered when scoring this variable." MCL 777.44(2)(a).

The author of Shepherd's presentence investigation report stated that Shepherd's co-defendant said that Shepherd was the cook for the manufacture of methamphetamine and that another person involved indicated that Shepherd approached him and asked him to purchase pseudoephedrine for the manufacture of methamphetamine. These statements were sufficient to support the trial court's finding. *Hardy*, 494 Mich at 438.[1]

---

[1] To the extent Shepherd argues that the trial court may not consider facts that were not proved beyond a reasonable doubt in sentencing, this Court has rejected that argument, see *People v*

There were no errors warranting relief.

Affirmed.

/s/ Peter D. O'Connell
/s/ Donald S. Owens
/s/ Michael J. Kelly

---

*Herron*, 303 Mich App 392; 845 NW2d 533 (2013), and we are bound to follow that decision. MCR 7.215(J)(1).