*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
November 4, 2021

Plaintiff-Appellee,

v

No. 352381
Jackson Circuit Court
LC No. 18-003744-FH

MARLON EUGENE DAVIS, also known as
MARLIN EUGENE DAVIS,

Defendant-Appellant.

Before: MARKEY, P.J., and BECKERING and BOONSTRA, JJ.

PER CURIAM.

Defendant, Marlon Eugene Davis, appeals as of right his jury trial conviction of two counts of possession with intent to deliver methamphetamine, MCL 333.7401(2)(b)(*i*). The trial court sentenced defendant, as a third-offense habitual offender, MCL 769.11, and a double-drug offender, MCL 333.7413(2), to 23 to 40 years' imprisonment on both counts. On appeal, defendant's appellate counsel argues that the trial court erred by denying defendant's motion to suppress evidence, and that it abused its discretion by admitting other-acts evidence at trial. Defendant, in *propria persona*, raises several additional claims in a Standard 4 Brief.[1] For the reasons stated in this opinion, we affirm.

## I. BASIC FACTS

On May 29, 2018, as part of an investigation concerning the distribution of narcotics, officers from the Jackson Narcotics Enforcement Team (JNET) asked officers from the Michigan State Police to conduct a traffic stop of defendant's vehicle on westbound I-94.[2] One of the officers walked a drug-detection dog around the exterior of the vehicle and the dog alerted to the presence

---

[1] Defendant's Standard 4 Brief was filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4.

[2] The resulting police report indicated that defendant was pulled over because his vehicle's windows were tinted.

of narcotics. The officer then allowed the dog to search the interior of the vehicle and the dog alerted to the presence of narcotics near the center console. Trooper Jeffery Schrieber discovered a coffee mug with a false bottom in the center console that contained a white powdery substance. The amount of substance was too small to be field tested, but subsequent laboratory testing showed that the substance was heroin.

After the traffic stop, officers executed a search warrant for records and documents related to narcotics trafficking at defendant's residence. While searching defendant's home, Michigan State Police Detective Jacob Escott found marijuana in a kitchen cabinet, and as a result, Jackson County Sheriff's Officer Detective Mark Easter requested and obtained a search warrant for narcotics in defendant's home. During that search, Detective Escott also found methamphetamine in a cabinet beneath the sink, in addition to small plastic bags and a scale. The prosecution charged defendant with one count of possession with intent to deliver methamphetamine and one count of possession of marijuana, MCL 333.7403(2)(d),[3] in Case No. 2018-003719-FH.

On October 10, 2018, Michigan State Trooper James King stopped defendant's vehicle and arrested defendant because he had an outstanding felony arrest warrant as a result of the aforementioned events. An inventory search of the vehicle revealed $2,000 hidden in the sunroof, and in the hatchback they found 1,057 grams of methamphetamine, or just over one kilo of crystal meth. The prosecution then charged defendant with one count of possession with the intent to deliver methamphetamine, in Case No. 2018-003744-FH.

Preliminary examinations were held in each case, with Detectives Escott and Easter providing testimony in Case No. 2018-003719-FH and Detectives Escott and Easter, as well as Trooper King, providing testimony in Case No. 2018-003744.[4] At the end of each examination, the court bound over defendant for trial. Thereafter, the prosecution filed a notice of intent in Case No. 2018-003744-FH to introduce other-acts evidence gleaned in Case No. 2018-003719-FH. Defendant moved to suppress evidence seized in both cases, contending that there was no probable cause for the May 2018 traffic stop and all the items discovered following that stop were inadmissible. At the motion hearing in regard to the other-acts evidence, the trial court indicated that evidence related to the May 2018 traffic stop and search of defendant's home (Case No. 2018-003719-FH) could be presented at the trial for the events that occurred in October 2018 (Case No. 2018-003744-FH). Defense counsel then asked the trial court to join the two cases, and the court agreed. In light of the joinder, the prosecution added an additional count of possession with the intent to deliver methamphetamine in Case No. 2018-003744-FH and dropped Case No. 2018-003179-FH. Regarding defendant's motion to suppress evidence, the trial court found that both the May 2018 traffic stop and affidavit for the initial search of defendant's home were proper.

---

[3] The possession of marijuana charge was later dropped.

[4] Evidence regarding the traffic stop on May 29, 2018 was not provided at either preliminary examination. As noted later, the parties and the trial court relied on a police report later admitted into the record as the evidence for what occurred.

-2-

Following trial, the jury found defendant guilty of both counts of possession of methamphetamine. Defendant now appeals.

## II. ANALYSIS

## A. MOTION TO SUPPRESS EVIDENCE

Defendant first argues that the trial court erred by denying his motion to suppress evidence because there was no probable cause for the dog to sniff the inside of the vehicle, the residue in the bottom of the coffee mug could not be determined to be narcotics until months later, and the search of his home was based on stale information and lacked credibility.[5] We disagree.

This Court reviews de novo a trial court's decision regarding a motion to suppress evidence. *People v Moorman*, 331 Mich App 481, 484; 952 NW2d 597 (2020). This Court also reviews de novo underlying constitutional issues, such as whether a violation of the Fourth Amendment occurred. *Id*. at 485. The trial court's factual findings are reviewed for clear error. *Id*. "A factual finding is clearly erroneous if it leaves the Court with a definite and firm conviction that the trial court made a mistake." *Id*. (quotation marks and citation omitted).

The United States and Michigan Constitutions protect individuals from unreasonable searches and seizures. *People v Kazmierczak*, 461 Mich 411, 417; 605 NW2d 667 (2000). See also US Const, Am IV; Const 1963, art 1, § 11. When the police conduct a search or seizure without a warrant and the conduct of the police does not fall within one of the exceptions to the warrant requirement, the search or seizure is considered unreasonable. *People v Hellstrom*, 264 Mich App 187, 192; 690 NW2d 293 (2004). Generally, evidence that the police obtain from an illegal search is inadmissible in the criminal proceeding. *Id*. at 193.

In regard to vehicles, this Court has held that "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *People v Kavanaugh*, 320 Mich App 293, 299; 907 NW2d 845 (2017) (quotation marks and citation omitted). Additionally, the search of an automobile is reasonable without a warrant if there is probable cause to believe that the automobile contains contraband. *People v Clark*, 220 Mich App 240, 242; 559 NW2d 78 (1996). "[I]f probable cause justifies the search of the lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *People v Carter*, 194 Mich App 58, 61; 486 NW2d 93 (1992) (quotation marks and citation omitted).

Defendant challenges the May 2018 traffic stop, specifically arguing that he was only stopped because JNET officers requested it. However, officers also explained that defendant had tinted windows in violation of MCL 257.709(1)(a). Although defendant argues that the explanation for pulling him over for tinted windows was pretextual, "when there is probable cause to believe that a driver has violated a traffic law, it is constitutional to briefly detain the driver for purposes of addressing the violation even if the officer's subjective intent for stopping the car is based on other factors." *Kavanaugh*, 320 Mich App at 299. See also *Whren v United States*, 517

---

[5] Defendant also raises a similar claim in his Standard 4 Brief.

US 806, 810; 116 S Ct 1769; 135 L Ed 2d 89 (1996) ("As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.").

Defendant also argues that the canine alert on the outside of his vehicle did not provide probable cause to search the interior of his vehicle. However, a drug-detection dog's alert to the presence of drugs in a vehicle is sufficient for probable cause to search a vehicle as long as "the use of the dog is itself [not] the result of illegal conduct by the officers." *Clark*, 220 Mich App at 243. In this case, the drug-detection dog was present at the time that defendant's vehicle was stopped. An officer circled the outside of the vehicle with the dog and the dog alerted to the presence of drugs. Therefore, the stop was not unlawfully prolonged and the officers had probable cause to search defendant's vehicle. See *People v Williams*, 472 Mich 308, 318 n 16; 696 NW2d 636 (2005) (explaining that "as long as the traffic stop is not prolonged, an officer may use a drug-detection dog to sniff a vehicle during the stop, even if the defendant does not consent and the officer lacks reasonable, articulable suspicion that the occupants of the vehicle are involved with narcotics") (quotation marks and citation omitted).

Moreover, contrary to defendant's assertion, the information in the affidavit for the search warrant for records and documents at his home was not stale.

"A search warrant should be upheld if a substantial basis exists to conclude that there is a fair probability that the items sought will be found in the stated place." *People v Brown*, 279 Mich App 116, 127; 755 NW2d 664 (2008) (quotation marks and citation omitted). "The reviewing court should ask whether a reasonably cautious person could have concluded that there was a substantial basis for the finding of probable cause." *Id*. (quotation marks and citation omitted). "The underlying affidavit must be read in a common sense and realistic manner . . . ." *Id*. (quotation marks and citation omitted; ellipsis in original). "The passage of time is a valid consideration in deciding whether probable cause exists." *Id*. at 128. "The measure of the staleness of information in support of a search warrant rests on the totality of the circumstances, including the criminal, the thing to be seized, the place to be searched, and the character of the crime." *Id*.

In this case, Detective Easter was the affiant who swore to the information provided in the affidavit for the search warrant. In the affidavit, he described the May 2018 traffic stop and the discovery of the mug with the false bottom. In addition, he described an anonymous tip that was received within the last 16 months informing police that an individual who was later identified as defendant was selling heroin in Jackson County. He also described another anonymous tip that was received in July 2017, which identified the make and model of defendant's vehicle. Detective Easter listed defendant's vehicle registration information and his address as provided by the secretary of state office. Further, he described a 2010 search of defendant's home which resulted in the discovery of marijuana and defendant's subsequent guilty plea to the delivery of marijuana. On the same day that Detective Easter swore to the affidavit, a judge signed a search warrant for records and documents.

Defendant's contention is that the aforementioned information was stale and improper support for a search warrant. However, the information contained in the affidavit indicated that it was likely that defendant was and had been running a drug trafficking operation and was not simply

-4-

part of a one-time drug deal, which was why the search warrant was for records and documents. See *People v Stump*, 196 Mich App 218, 226-227; 492 NW2d 795 (1992) (holding that "[b]ecause plants require time to germinate and grow," evidence relating to the defendant's purchase of marijuana seeds and equipment used to grow marijuana "was not likely to have dissipated despite the passage of time"). Additionally, the affidavit also contained information linking defendant to drug trafficking on the very day the affidavit was sworn to and the search warrant was issued. Detective Easter explained that the use of items with hidden compartments was common with drug traffickers and a coffee mug with a false bottom containing a white, powdery substance was discovered in defendant's vehicle. See *Brown*, 279 Mich App at 128.

Defendant also contends that the anonymous tips were unreliable. MCL 780.653 provides, in relevant part, as follows:

> The judge or district court magistrate's finding of reasonable or probable cause shall be based upon all the facts related within the affidavit made before him or her. The affidavit may be based upon information supplied to the complainant by a named or unnamed person if the affidavit contains 1 of the following:
>
> * * *
>
> (b) If the person is unnamed, affirmative allegations from which the judge or district magistrate may conclude that the person spoke with personal knowledge of the information and either that the unnamed person is credible or that the information is reliable.

In this case, defendant does not provide any argument that the unnamed person did not have personal knowledge of the information provided, and the details that the informant provided regarding defendant indicated that he or she had personal knowledge. See *People v Martin*, 271 Mich App 280, 302; 721 NW2d 815 (2006). Additionally, the information appeared reliable because it coincided with Detective Sergeant Huttenlocker's independent investigation. See *Illinois v Gates*, 462 US 213, 241; 103 S Ct 2317; 76 L Ed 2d 527 (1983) (explaining that several previous decisions "have consistently recognized the value of corroboration of details of an informant's tip by independent police work"). The informant told Detective Sergeant Huttenlocker that a person named "Man," who lived in Spring Arbor Township, was selling heroin in Jackson county. The informant also indicated that "Man," drove an SUV and owned a corvette and that he was supplying heroin to a certain person in Jackson. Detective Sergeant Huttenlocker identified defendant as "Man" using a law enforcement data base because a booking form listed defendant as "Man." He also confirmed defendant's address and registered vehicle.

Defendant finally asserts that the affidavit was "bare bones," which meant that the good-faith exception to the exclusionary rule was inappropriate in this case.

The good-faith exception to the exclusionary rule provides that if the law enforcement officers who executed the warrant acted in reasonable, good-faith reliance on the warrant's validity, trial courts need not exclude the illegally seized evidence. *United States v Leon*, 468 US 897, 919-921; 104 S Ct 3405; 82 L Ed 2d 677 (1984); *People v Goldston*, 470 Mich 523, 525-526; 682 NW2d 479 (2004). However, because the trial court properly denied defendant's motion to

suppress, it is unnecessary for this Court to address any exceptions to the exclusionary rule. The affidavit provided sufficient information to support the reasonable "belief in the existence of probable cause," and the evidence obtained was not acquired in violation of the Fourth Amendment.[6] *People v Czuprynski*, 325 Mich App 449, 472; 926 NW2d 282 (2018).

## B. OTHER-ACTS EVIDENCE

Defendant next argues that the trial court abused its discretion by permitting the admission of other-acts evidence at trial. Because the trial court joined the cases into one trial in response to a request from defense counsel, this argument is without merit.

Once the trial court indicated that it would allow evidence related to the May 2018 traffic stop and search of defendant's home to be admitted in the case concerning the October 2018 traffic stop, defense counsel asked that the cases to be tried together. On appeal, defendant failed to challenge the trial court's decision to join the cases under MCR 6.120(B)(1), and even if he had, the Michigan Supreme Court has held that "[c]ounsel may not harbor error as an appellate parachute." *People v Carter*, 462 Mich 206, 214; 612 NW2d 144 (2000).

At any rate, even if the charges were tried separately, evidence from each crime would be admissible in the other trial. *People v Williams*, 483 Mich 226, 237; 769 NW2d 605 (2009). The evidence obtained in relation to both crimes established defendant's common scheme or plan to distribute narcotics. *Id*. See also MRE 404(B)(1) (providing that evidence of other crimes is admissible as proof of "scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material").[7]

## C. INEFFECTIVE ASSISTANCE OF COUNSEL

In defendant's Standard 4 Brief, he argues that he was denied the effective assistance of counsel at trial. We disagree.

"Generally, whether a defendant had the effective assistance of counsel "is a mixed question of fact and constitutional law." *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012) (quotation marks and citation omitted). "This Court reviews findings of fact for clear error and questions of law de novo." *Id*. In an instance such as this, where defendant failed to move for

---

[6] Similarly, defendant appears to argue in his Standard 4 Brief that the inevitable discovery doctrine does not apply. See *People v Hyde*, 285 Mich App 428, 439-440; 775 NW2d 833 (2009). However, this doctrine was not addressed during the lower court proceedings. Moreover, because the trial court properly determined that evidence obtained did not violate the Fourth Amendment, this Court is not required to address the applicability of the inevitable discovery doctrine.

[7] Defendant also asserts on appeal that the prosecution failed to provide written notice of its intent to present other-acts evidence at least 14 days before trial as required by MRE 404(b)(2). However, because the cases were ultimately tried together, there was no such evidence presented and we decline to further address this claim.

an evidentiary hearing or a new trial, this Court's review is limited to mistakes apparent from the record. *Id.*

The defendant has the burden of establishing that he was denied effective assistance of counsel. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). The defendant must "show (1) that trial counsel's performance was objectively deficient, and (2) that the deficiencies prejudiced the defendant." *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018). For the first requirement, the defendant "must overcome the strong presumption that counsel's performance was born from a sound trial strategy." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). For the second requirement, the defendant "must show that, but for counsel's deficient performance, a different result would have been reasonably probable." *People v Armstrong*, 490 Mich 281, 290; 806 NW2d 676 (2011).

## 1. EVIDENTIARY HEARING

Defendant first contends that he was denied effective assistance because his counsel failed to request an evidentiary hearing associated with the suppression motion.

Although not addressed by defendant, the parties discussed the necessity of an evidentiary hearing with the trial court. Defense counsel initially left the decision to the trial court. However, in response to the prosecution's argument that even if the search warrant was insufficient, the officers relied on it in good faith, defense counsel requested an evidentiary hearing, specifically in relation to the good faith issue. The trial court orally ruled that the search warrant was proper and the evidence discovered at defendant's home was admissible, but stated that defense counsel could explore the issue of good faith at trial. The evidentiary hearing issue came up again on the first day of trial before jury selection. Defense counsel again stated that whether to hold a hearing was within the court's discretion. After a discussion, the trial court ultimately decided that a hearing was unnecessary at that point because it had already ruled on the admissibly of the evidence discovered at defendant's home and would allow the defense to question officers concerning good faith.

As a result, the evidentiary hearing issue was addressed during the lower court proceedings; however, the trial court ultimately ruled that it was unnecessary. It appears that the trial court relied on the police report prepared by Detective Easter and Detective Escott that was admitted into the record and the testimony provided at the cases' respective preliminary examinations to make its determination. See *People v Kaufman*, 457 Mich 266, 276; 577 NW2d 466 (1998) (holding that a trial court may decide a motion to suppress on the basis of the preliminary-examination record).[8] Defendant does not explain what kind of evidence should have been presented at an evidentiary hearing; and therefore, he fails to show that counsel was deficient in this regard. Moreover, defendant does not establish that an evidentiary hearing would have made a difference in the outcome of his case. Accordingly, he has failed to prove that his counsel was ineffective. See *Trakhtenberg*, 493 Mich at 52; *Armstrong*, 490 Mich at 290.

---

[8] As earlier noted, the parties agreed to the admission of the police report into the record and do not dispute this admission on appeal.

## 2. DEFECTIVE MOTION TO SUPPRESS EVIDENCE

Defendant next argues that he was denied effective assistance because his counsel referred to him as "Mr. Evans" in the motion to suppress.

In the motion, defense counsel repeatedly refers to defendant as "Mr. Evans." Defendant's last name is not Evans. The record is unclear as to the identity of "Mr. Evans." It is likely that the misidentification is the result of a mistake on the part of defense counsel. However, there is no indication in the record that, but for defense counsel's mistake, there would have been a different outcome regarding the trial court's ruling. See *Armstrong*, 490 Mich at 290. The record indicates that neither the prosecution nor the trial court noticed this error, and if they did, they did not mention it. Additionally, the trial court did not rely on this mistake when ruling on the motion.

Defendant also appears to challenge defense counsel's failure to raise exceptions to the exclusionary rule in the motion to suppress evidence. However, defense counsel's duty was to have the evidence excluded, not admitted. The trial court ultimately found that the search warrant was proper, which meant that the exclusionary rule was inapplicable. Therefore, it was ultimately unnecessary for the prosecution to explore exceptions to the exclusionary or have defense counsel argue against them. As a result, defendant failed to prove that he was denied effective assistance of counsel. See *id*.

## D. PROSECUTORIAL MISCONDUCT

Finally, defendant argues in his Standard 4 brief that the prosecutor committed prosecutorial misconduct by allowing two trial witnesses to provide perjured testimony. We disagree.

Defendant did not raise this claim during the trial court proceedings, and therefore, it is unpreserved. This Court reviews for plain error an unpreserved claim of prosecutorial misconduct. *People v Watson*, 245 Mich App 572, 586; 629 NW2d 411 (2001). "In order to avoid forfeiture of an unpreserved claim, the defendant must demonstrate plain error that was outcome determinative." *Id*. "It is well settled that a conviction obtained through the knowing use of perjured testimony offends a defendant's due process protections guaranteed under the Fourteenth Amendment." *People v Aceval*, 282 Mich App 379, 389; 764 NW2d 285 (2009). "If a conviction is obtained through the knowing use of perjured testimony, it must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Id*. (quotation marks and citation omitted). "Stated differently, a conviction will be reversed and a new trial will be ordered, but only if the tainted evidence is material to the defendant's guilt or punishment." *Id*. Therefore, "it is the misconduct's effect on the trial, not the blameworthiness of the prosecutor, [which] is the crucial inquiry for due process purposes." *Id*. at 390 (quotation marks and citation omitted; alteration in original). "The entire focus of our analysis must be on the fairness of the trial, not on the prosecutor's or the court's culpability." *Id*.

Defendant alleges that Detective Easter and Trooper King perjured themselves at trial when they testified that Trooper King did not use his canine during the search for records and documents. In support of his argument, defendant provides to this Court copies of Trooper King's and Detective Easter's police reports regarding the search of his home. However, those reports are not

part of the record, and this Court may not expand the record on appeal. *People v Powell*, 235 Mich App 557, 561 n 4; 599 NW2d 499 (1999). Additionally, even assuming that those reports were part of the record, they do not support defendant's claim. To the extent that defendant requests an evidentiary hearing on this matter, his request is inappropriate because he should have moved for a remand under MCR 7.211(C)(1)(*ii*). See *People v Bass*, 317 Mich App 241, 276 n 12; 893 NW2d 140 (2016).

Affirmed.

/s/ Jane E. Markey
/s/ Jane M. Beckering
/s/ Mark T. Boonstra