*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellant,

v

KENNETH MCDONALD,

    Defendant-Appellee.

UNPUBLISHED
February 17, 2026
1:31 PM

No. 375243
Macomb Circuit Court
LC No. 2024-002089-FC

Before: FEENEY, P.J., and GARRETT and BAZZI, JJ.

PER CURIAM.

On remand by the Michigan Supreme Court,[1] the prosecution appeals by leave granted the opinion and order granting defendant Kenneth McDonald's motion to suppress related to the search of his cell phone. We affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

This case arose when McDonald was charged with second-degree murder, MCL 750.317, in relation to the death of his mother-in-law, Stella Maltese (the decedent). On October 12, 2023, at approximately 11:00 a.m., the decedent and the decedent's sister were present at the decedent's residence when Grace McDonald, who is the decedent's daughter and McDonald's wife, stopped by. At about noon, the decedent's sister and Grace left the premises, with Grace leaving in the decedent's blue van, which the decedent permitted her and McDonald to use.

At approximately 2:45 p.m., McDonald and Grace drove to the decedent's home to retrieve tools from the decedent's garage after not being able to get in contact with her. McDonald went into the garage and Grace entered the home, where she found the decedent on the floor, with a cord wrapped tightly around her neck. McDonald removed the cord and began cardiopulmonary resuscitation (CPR) while Grace called the police. The decedent was pronounced dead after the

---

[1] *People v McDonald*, ___ Mich ___; 25 NW3d 377 (2025).

police arrived. After an initial interview at the scene, McDonald and Grace were taken to the Shelby Township Police Department (STPD) for questioning.

During his subsequent interview with the police, McDonald acknowledged the existence of an Adult Protective Services (APS) report, in which the decedent alleged McDonald was embezzling money from her. McDonald denied doing so and denied killing the decedent. In the course of the interview, the police observed a red mark on the top of McDonald's hands, between his thumb and pointer finger, which an officer believed was caused by McDonald strangling the decedent with a cord. McDonald and Grace claimed to be at their home from noon until the time they arrived at the decedent's residence. Throughout the investigation, the police retrieved surveillance footage of the roads between the decedent's and McDonalds' homes. The footage depicted a blue van returning to the area of the decedent's residence at about 1:00 p.m. and returning to the area of the McDonalds' home at approximately 1:30 p.m., contradicting McDonald's and Grace's contentions.

Detective Phillip Young of the STPD generated a search warrant for McDonald's and Grace's shared residence and their individual cell phones, which were discovered in the blue van owned by the decedent. On October 13, 2023, STPD Detective Sergeant Charles Johnson authored the supporting affidavit requesting the specified data be extracted from the phones:

- Call logs, to include incoming, outgoing and missed calls

- Phonebook and contacts to include phone numbers, and e-mail addresses.

- SMS/MMS messages and attached multimedia files, to include incoming and outgoing.

- Secondary SMS applications and messages to include KIK, TextPlus, Snapchat and others

- E-mails to include incoming and outgoing

- Pictures and all ExIF information to include geotagging information (GPS location of the location of the picture.)

- Videos and geotagging information

- Audio files to include any voicemail stored on the device and voice notes

- Secondary phone number accounts such as Skype, Line 2 and other applications that can assign a second roaming phone number.

- WiFi network information, to include SSID (Network name) and GPS information of the network

- GPS directions

- Calendar information, including sync'ed [sic] calendars

- Internet History and usage to including websites visited, search terms and Cookies

- And any account information, settings, and saved usage information for any and all installed applications, also known as "apps" on the device.

Detective Johnson wrote the following in support of the search warrant:

On 10/12/2023 at 2:46PM, Shelby Township Police Department received a 911 call from []. Female caller, later identified as Grace Marie McDonald was reporting that her mother Stella Maltese possibly deceased and had a cord around her neck. Grace was frantic on the phone. A male, later identified as Kenneth McDonald got on the phone and stated she was found face down on the floor. Officers arrived on scene and observed Stella Maltese deceased on the floor. Stella had a ligature mark across the front and sides of her neck. There was a broken computer keyboard cord lying on living room floor next to where the victim was found. The cord was broke off of the keyboard. The chair and the computer tower were knocked over. Officers observed that the oven was on and there was chicken cooking inside of it.

Grace and her Aunt Grace Schmidt, Stella's sister, stated they were at the home and Stella was cooking dinner at that time. They left at l245pm in 2 different vehicles. Grace McDonald drove the 2011 Chrysler Town and Country and Grace Schmidt drove the 2011 Dodge Journey.

Grace McDonald and Kenneth McDonald stated they needed to get some tools from the home around 1430hrs. They called Stella two times and she did not answer. When they arrived they found her on the floor with a cord around her neck. They both stated they were at home . . .in Macomb Twp between approximately 1245 and 1440hrs

On 4/24/2023, the Shelby Township Police Department received a[n] Adult Protective Services referral for Stella Maltese. At that time Stella believed checks were being withdrawn from her Comerica Bank Account. The account was only in Stella's name. She advised that the only access her daughter or Kenneth had to the account were deposit tickets she gave them to repay the Home Equity Line of Credit. . . .

On 8/21/2023, the Shelby Township Police Department received an Adult Protective Services referral for Stell[a] Maltese. The referral stated that Stella had checks drawn off her account that were being forged by her daughter, Grace McDonald and Kenneth McDonald. Since February the total amount taken is roughly $19,000. Stella wanted to follow through with pressing charges. Detective Verdura is in charge of the case. Stella advised that she had credit/bank reports printed out and she was going to tum them over to him on 10/13/2023.

Additional investigation of stationary LPR cameras in the area, as well as intersection video indicates that the Town and Country Van may have returned to the area of 21 Hayes between 1300 and 1330 in contradiction to statements made by Grace. The listed devices were located inside the Town and Country van, owned by Stella, but normally driven by Grace and Kenneth.

Further investigation revealed that Kenneth had markings on his hands that appeared to be of a similar shape and size to the cord found near Stella's body. These markings were indentations and appear consistent with application of pressure.

As listed devices may contain, in writer's training and experience, communications data, location data, and other digital evidence with relation to this incident, Affiant requests this petition for examination be granted.

The search warrant was granted as requested. Detective Young and Detective Johnson analyzed the geolocation data obtained from McDonald's cell phone, which indicated McDonald was at the decedent's home at 1:28 p.m. An autopsy was conducted on the decedent, identifying the cause of death as strangulation and the manner of death as homicide. McDonald was then charged with second-degree murder.

McDonald moved to suppress the data obtained from his cell phone, contending that the supporting affidavit failed to establish a nexus between the target cell phone, McDonald, and the alleged conduct; that the affidavit failed to satisfy the particularity requirement; and that the good-faith exception to the exclusionary rule did not apply.[2] The trial court held an evidentiary hearing on January 31, 2025. Detective Johnson was the only witness to testify at the hearing. He was qualified as an expert in cell phone extraction and analysis. Detective Johnson explained that his main interest in McDonald's phone was location data and "communication data from about the time of the incident." Detective Johnson was looking for location data because witness statements indicated that the decedent was alone when she died; however, a license-plate recognition camera and surveillance footage indicated that the blue van McDonald and Grace had been driving returned to the area near the decedent's home between 1:00 p.m. and 1:30 p.m. Detective Johnson stated that he was looking for communication data between McDonald and Grace that involved the decedent's murder.

According to Detective Johnson, he included a long list of areas to search because communication and location data could be found in different places on the phone. He testified that the geographical location data was located within the T-Mobile diagnostic folder. The location data indicated that McDonald's cell phone was at or near the decedent's home at 1:35 p.m. The phone was then in a subdivision in Macomb Township near McDonald's home at 1:47 p.m. The cell phone then returned to the area near the decedent's home at 2:30 p.m. The phone data further demonstrated that Grace and McDonald sent each other text messages, which contradicted their statements that they were together. On cross-examination, Detective Johnson acknowledged that

---

[2] McDonald initially moved to suppress the evidence retrieved from both phones; however, he later withdrew his motion related to Grace's phone.

the affidavit did not list a specific date and time with respect to the property to be searched and seized. He further recognized that he never used the words "murder," "homicide," "suspect," or "motive" in the affidavit. Detective Johnson additionally admitted he never stated that he was investigating an offense in the affidavit. The court took the matter under advisement and allowed the parties to file supplemental briefs.[3]

The trial court granted McDonald's motion to suppress, agreeing with McDonald's argument that the affidavit did not provide sufficient context connecting the cell phone listed in the search warrant with any alleged criminal behavior by McDonald. The court observed that Detective Johnson's testimony acknowledged that there was no specific offense listed in the affidavit, and that McDonald was never referred to as a suspect. Further, the trial court resolved that the warrant, even after incorporating the affidavit, lacked the required particularity to be valid under the Fourth Amendment. The court explained that the warrant placed no restriction on what could be searched on the phone that related to the decedent's death. The trial court noted that Detective Johnson's testimony acknowledged that the warrant did not include specific time or date limitations and included a "broad" statement. The court opined that the warrant permitted the police to search everything on the phone since its first use.

The trial court further determined the exclusionary rule did not apply, relying on this Court's opinion in *People v Carson*, ___ Mich App ___;___ NW3d ___ (2024) (Docket No. 355925) (*Carson I*), rev'd in part on other grounds ___ Mich ___; ___ NW3d ___ (2025) (Docket No. 166923) (*Carson II*). The court stated that the warrant was a general warrant that no reasonable police officer could have relied upon in objective good faith. As a result, the trial court ruled that severance was inappropriate, and McDonald's motion to suppress was granted.

The prosecution applied for leave to appeal in this Court, which was denied. *People v McDonald*, unpublished order of the Court of Appeals, entered July 2, 2025 (Docket No. 375243). The prosecution then applied for leave to appeal in the Michigan Supreme Court, which, in lieu of granting leave, remanded the matter to this Court for consideration as on leave granted. *People v McDonald*, ___ Mich ___; 25 NW3d 377 (2025).

## II. STANDARDS OF REVIEW

"We review de novo a trial court's ultimate decision on a motion to suppress on the basis of an alleged constitutional violation." *People v Gingrich*, 307 Mich App 656, 661; 862 NW2d 432 (2014). "We review a trial court's findings of fact in a suppression hearing for clear error." *People v Sammons*, 505 Mich 31, 41; 949 NW2d 36 (2020). "Clear error is established when the appellate court is left with a firm and definite conviction that an error occurred." *People v Horton*, 345 Mich App 612, 616; 8 NW3d 622 (2023). "The application of law to those facts is a constitutional matter that this Court reviews de novo." *Id*. "Any ancillary questions of law relevant to the motion to suppress are also reviewed de novo." *Gingrich*, 307 Mich App at 661.

---

[3] Although Detective Johnson's testimony regarding the drafting of the search warrant and affidavit is included for context, the four corners of the relevant documents themselves reveal the numerous deficiencies in both the warrant and the affidavit.

## III. ANALYSIS

The prosecution argues that the trial court erred in granting McDonald's motion to suppress, concluding that the search warrant was invalid. We disagree.

The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." US Const, Am IV. Comparably, the Michigan Constitution of 1963 states:

> The person, houses, papers, possessions, electronic data, and electronic communications of every person shall be secure from unreasonable searches and seizures. No warrant to search any place or to seize any person or things or to access electronic data or electronic communications shall issue without describing them, nor without probable cause, supported by oath or affirmation. The provisions of this section shall not be construed to bar from evidence in any criminal proceeding any narcotic drug, firearm, bomb, explosive or any other dangerous weapons seized by a peace officer outside the curtilage of any dwelling house in this state. [Const 1963, art 1, § 11.]

"Absent a compelling reason, Michigan courts must construe Const 1963, art 1, § 11 to provide the same protection as that secured by the Fourth Amendment." *People v Brcic*, 342 Mich App 271, 277; 994 NW2d 812 (2022). "Cell phones in the modern world hold 'the privacies of life.' " *Carson II*, ___ Mich at ___; slip op at 16, quoting *Riley v California*, 573 US 373, 403; 134 S Ct 2473; 189 L Ed 2d 430 (2014). "Therefore, like the protections that extend to the home, 'Fourth Amendment principles apply with equal force to the digital contents of a cell phone.' " *Carson II*, ___ Mich at ___; slip op at 16, quoting *People v Hughes*, 506 Mich 512, 527; 958 NW2d 98 (2020). "Accordingly, in the context of a cell-phone search, we must jealously guard the requirements of the Fourth Amendment, including the particularity requirement." *Carson II*, ___ Mich at ___; slip op at 16.

"The last two phrases of the Fourth Amendment, the particularity requirement, only allows the issuance of search warrants 'particularly describing the place to be searched, and the persons or things to be seized.' " *People v Bogucki*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 372629); slip op at 6, quoting US Const, Am IV. The Michigan Constitution contains a substantively similar provision at Const 1963, art 1 § 11. " 'The purpose of the particularity requirement in the description of items to be seized is to provide reasonable guidance to the executing officers and to prevent their exercise of undirected discretion in determining what is subject to seizure.' " *Brcic*, 342 Mich App at 278, quoting *People v Unger*, 278 Mich App 210, 245; 749 NW2d 272 (2008). "A search warrant is sufficiently particular 'if the description is such that the officer with a search warrant can with reasonable effort ascertain and identify' the people and property subject to the warrant." *Id.* at 278, quoting *Steele v United States*, 267 US 498, 503; 45 S Ct 414; 69 L Ed 757 (1925). "It is also well settled that a search may not stand on a general warrant." *People v Hellstrom*, 264 Mich App 187, 192; 690 NW2d 293 (2004).

The Michigan Supreme Court has expressly rejected the notion that a warrant automatically authorizes the police to examine all digital data seized based on "the mere possibility that evidence may conceivably be found anywhere on the device, or that evidence might be concealed, mislabeled, or manipulated." *Hughes*, 506 Mich at 541; see also *Carson II*, ___ Mich at ___; slip op at 18. Stated alternatively, the Michigan Supreme Court has declined to endorse a blanket rule permitting unrestricted review of digital information based on speculative possibilities alone. "Such a per se rule would effectively nullify the particularity requirement of the Fourth Amendment in the context of cell-phone data and rehabilitate an impermissible general warrant that would in effect give police officers unbridled discretion to rummage at will amount a person's private effects." *Hughes*, 506 Mich at 541-542 (citations and quotations marks omitted). Further, "allowing a search of an entire device for evidence of a crime based upon the possibility that evidence of the crime could be found anywhere on the phone and that the incriminating data could be hidden or manipulated would 'render the warrant a general warrant in violation of the Fourth Amendment's particularity requirement.' " *Id*. (quotation marks and citation omitted). "Ultimately, the degree of particularity required to adequately direct a search depends on the crime being investigated and the items sought." *Carson II*, ___ Mich at ___; slip op at 23.

In this case, the search warrant at issue sought an extensive range of data from McDonald's cell phone, including call logs, contacts, text messages, e-mails, pictures, videos, audio files, GPS coordinates, calendar, Internet history, and all account information for any installed applications. In the last paragraph of the affidavit, Detective Johnson stated that in his training and experience, McDonald's cell phone "may contain . . . communications data, location data, and other digital evidence with[] relation to this incident. . . ." However, Detective Johnson did not identify the specific "incident" to which he referred. The affidavit not only mentioned the decedent's murder but also referred to two prior incidents of possible financial crimes involving the decedent. The language used in the affidavit indicates that the financial offenses may have been a motive for McDonald and Grace to murder the decedent; however, Detective Johnson does not expressly make this connection. Moreover, the only fact to indicate McDonald was a suspect was the single sentence describing the markings discovered on McDonald's hands, which matched the cord found near the decedent. The affidavit does not mention McDonald's police interview, when he claimed he removed the cord and attempted CPR, resulting in the markings.

At the evidentiary hearing, Detective Johnson testified that he was mainly concerned with obtaining location data and communication data from McDonald's phone at the approximate time of the decedent's death. However, Detective Johnson did not limit the search to these specific categories or to a specific time or date range. See *Carson II*, ___ Mich at ___; slip op at 18 ("The lack of instruction on the scope, breadth, or focus of the search shifts the particularity requirement from the warrant, where it belongs, to the executing officer's discretion.")

In issuing the contested opinion and order, the trial court relied on *Carson I*, which the prosecution contends was improper. In *Carson I*, the police obtained a search warrant to search the contents of the defendant's cell phone and uncovered incriminating text messages and other circumstantial evidence connecting the defendant to the offenses charged. *Carson I*, ___ Mich App at ___; slip op at 3-4. The defendant was convicted and appealed, arguing ineffective assistance of counsel, contending that the "affidavit in support of the police's request for a search warrant was inadequate in that it failed to establish probable cause to believe that the cell phone would contain relevant evidence." *Id*. at 6-7. In the defendant's motion for a new trial, the trial

court determined defense counsel erred by failing to move to suppress the cell phone's contents but determined the error was harmless, because the good-faith exception applied. *Id.* at 7.

Regarding the underlying search of the cell phone, this Court held, "The warrant authorizing a search of the contents of [the] defendant's cell phone was too broad in violation of the particularity requirement, and the good-faith exception is inapplicable to these facts." *Id.* at 10-11. The search warrant in *Carson I*, among other things, sought:

> Any [sic] physical keys, encryption devices and similar physical items that are necessary to gain access to the cellular device to be searched or are necessary to gain access to the programs, data, applications and information contained on the cellular device(s) to be searched; Any [sic] passwords, password files, test keys, encryption codes or other computer codes necessary to access the cellular devices, applications and software to be searched or to convert any data, file or information on the cellular device into a readable form; This [sic] shall include thumb print and facial recognition and or digital PIN passwords, electronically stored communications or messages, including any of the items to be found in electronic mail ("e-mail"). Any and all data including text messages, text/picture messages, pictures and videos, address book, any data on the SIM card if applicable, and all records or documents which were created, modified, or stored in electronic or magnetic form and any data, image, or information that is capable of being read or interpreted by a cellular phone or a computer. [*Id.* at 12.]

This Court concluded that the warrant "was a general warrant that gave the police license to search everything on defendant's cell phone in the hopes of finding anything, but nothing in particular, that could help with the investigation." *Id.* at 12 (emphasis in original). This Court explained that making an opening reference to an investigation of larceny in a building and safe breaking "was negated by the ensuing instruction to search for such items by searching and seizing the entirety of the phone's contents." *Id.* at ____; slip op at 12. This Court found it particularly troubling that the warrant specifically authorized a search of the defendant's photographs and videos, "despite there being no evidence suggesting that these files would yield anything relevant . . . ." *Id.* at ___; slip op at 12. The *Carson I* Court further opined:

> Numerous other examples establish that many states have joined in our conclusion that that the particularity requirement disallows the issuance of warrants authorizing police to search the entirety of a person's cell phone contents for evidence of a particular crime; the massive scale of the personal information people store on their mobile devices means that there must be some limits to the scope of the search. [*Id.* at 14.]

In *Carson II*, the Michigan Supreme Court affirmed this Court's holding with respect to the particularity requirement for the search and seizure of cell phones but reversed on the ground that the defendant was unable to establish ineffective assistance of counsel. *Carson II*, ___ Mich at ___; slip op at 23-24, 29-30.

As in *Carson*, the search warrant in this case was insufficient to satisfy the particularity requirement of the Fourth Amendment because it essentially authorized the collection of all data

from McDonald's phone since the phone's first use. See *Carson II*, ___ Mich at ___; slip op at 21 ("Put simply, when information concerning the relevant time frame of the criminal activity exists, this time limitation should be included in the search warrant to ensure adequate particularity.") In addition, neither the affidavit, nor the warrant connected the data to be searched with any suspected criminal behavior by McDonald, thus failing to establish a nexus between the records sought and the offense alleged. For example, there was no information in the affidavit or warrant explaining how all of McDonald's photos, e-mails, calendar, or contacts would be relevant to the decedent's murder or even the previously alleged financial offenses. While Detective Johnson clarified at the evidentiary hearing that he was primarily interested in the geolocation and communication data from McDonald's cell phone, the warrant requested significantly greater information. See *Bogucki*, ___ Mich App at ___; slip op at 6 ("A search warrant for access to everything on a cell phone, for the purpose of finding anything that could assist with an investigation, is a general warrant that fails the particularity requirement.") Additionally, Michigan caselaw provides that review of a search warrant is strictly confined to the four corners of the warrant and its supporting affidavit, rather than relying on material never presented to the issuing magistrate. See *People v Keller*, 479 Mich 467, 475-477; 739 NW2d 505 (2007); see also *People v Russo*, 439 Mich 584, 603-604; 487 NW2d 698 (1992).

The police had sufficient information to appropriately curtail the search warrant in accordance with constitutional standards, yet failed to do so, and the magistrate compounded this failure by authorizing a warrant with obvious deficiencies. As opined by the Michigan Supreme Court:

> The need for specificity about the types of data expected to be encountered and searched must be weighed against the fact that law enforcement often will not be certain what evidence exists and where it will be located. This does not, however, free them from the obligation to provide the most specific description possible and to support a request to search each category of data mentioned in a warrant affidavit. Nor does it permit magistrates to approve boundless searches of electronic data when the information available provides a basis for a more reasonably tailored search.
>
> *   *   *
>
> In our modern age, when cell phones carry a virtually unlimited amount of private information, such wide-ranging exploratory rummaging is constitutionally intolerable and clearly violates the Fourth Amendment. [*Carson II*, ___ Mich at ___; slip op at 22, 24.]

Accordingly, the trial court properly granted McDonald's motion to suppress on this basis.

The prosecutor further argues that even if the search warrant was invalid, the evidence seized should still be admissible under the good-faith exception to the exclusionary rule. "Generally, evidence obtained in violation of the Fourth Amendment is inadmissible at trial." *People v Hughes (On Remand)*, 339 Mich App 99, 110-111; 981 NW2d 182 (2021). "The exclusionary rule is a judicially created remedy that originated as a means to protect the Fourth Amendment right of citizens to be free from unreasonable searches and seizures." *People v*

*Hawkins*, 468 Mich 488, 498; 668 NW2d 602 (2003). "The exclusionary rule, modified by several exceptions, generally bars the introduction into evidence of materials seized and observations made during an unconstitutional search." *Id*. at 498-499 (footnote omitted).

"However, there are exceptions to the exclusionary rule." *Bogucki*, ___ Mich App at ___; slip op at 7. "Among the exceptions is the good-faith exception, which 'renders evidence seized pursuant to an invalid search warrant admissible as substantive evidence in criminal proceedings where the police acted in reasonable reliance on a presumptively valid search warrant that was later declared invalid.' " *Hughes (On Remand)*, 339 Mich App at 111, quoting *Hellstrom*, 264 Mich App at 193. "In those cases, it is the magistrate rather than the officer who made an error and therefore excluding the evidence does not further the deterrence rationale behind the exclusionary rule. . . ." *Hughes (On Remand)*, 339 Mich App at 111. "At the same time, this Court has recognized that a warrant may be so facially deficient, in failing to particularize the place to be searched or the things to be seized, that executing officers could not reasonably have presumed it to be valid." *Bogucki* ___ Mich App at ___; slip op at 7.

The prosecution contends the suppression of the evidence was improper because there were no allegations of police misconduct. The prosecution asserts the only misconduct that the trial court penalized was "grammatical," because Detective Johnson specifically limited his search to the items listed in the affidavit. While there were no claims of police misconduct, the prosecution ignores this Court's holdings in *Carson I* and *Bogucki*. In *Carson I*, ___ Mich App at ___; slip op at 15, this Court concluded that "the warrant in this specific case was so facially deficient by virtue of its failure to particularize the places to be searched and things to be seized that the executing officers could not have reasonably presumed it to be valid," rendering the exclusionary rule inapplicable. In *Bogucki*, ___ Mich App at ___; slip op at 7, this Court adopted the holding in *Carson I* with respect to the exclusionary rule regarding improper searches of cell phones. Because the warrant in this case was similar to the warrant in *Carson*, the good-faith exception does not apply.

The prosecution asserts that the exclusionary rule would not bar total admission of the evidence, and this Court should sever the noncompliant portions of the search warrant. The prosecution relies on Judge Redford's dissent in *Carson I*. In his dissent, Judge Redford explained even if the warrant was constitutionally defective, the exclusionary rule would not bar the admission of the text messages between the defendant and his coconspirator, which had probable cause. *Carson I*, ___ Mich App at ___ (REDFORD, J., dissenting); slip op at 11. Dissenting opinions are not binding nor precedent. *People v Woolfolk*, 304 Mich App 450, 478; 848 NW2d 169 (2014), aff'd 497 Mich 23 (2014).

Whether severance is applicable is a multiple-step analysis. *Keller*, 479 Mich at 478-479. "First the court must divide the warrant into categories. Then, the court must evaluate the constitutionality of each category." *Id*. at 479. "If only some categories are constitutional, the court must determine if the valid categories are distinguishable from the invalid ones and whether the valid categories make up the great part of the warrant." *Id*. (quotation marks and citation omitted). The prosecution does not provide an analysis and relies on Judge Redford's dissent to support its position that the geolocation and communication data from October 12, 2023, may be severed from the warrant. The prosecution fails to explain how that could occur given the complexity and scope of the search. See *Blackburne & Brown Mtg Co v Ziomek*, 264 Mich App

615, 619; 692 NW2d 388 (2004) ("An appellant may not merely announce its position or assert an error and leave it to this Court to discover and rationalize the basis for its claims, unravel or elaborate its argument, or search for authority for its position. Insufficiently briefed issues are deemed abandoned on appeal.") (Quotation marks and citations omitted).

Ultimately, the facts in this case mirror those in *Carson*. Although the prosecution correctly notes that the search warrant incorporated an affidavit, the affidavit neither identified a suspect nor the offense under investigation and failed to establish any limiting factors relevant to the search. Such deficiencies run directly contrary to the core protections of the Fourth Amendment, which exist to prevent precisely this type of unfettered governmental intrusion. Law enforcement had an obligation to tailor the warrant in a manner consistent with constitutional requirements yet neglected to do so, as did the magistrate in authorizing the improper warrant. Accordingly, the trial court did not err in concluding that the exclusionary rule was inapplicable and in granting McDonald's motion to suppress.[4]

Affirmed.

/s/ Kathleen A. Feeney
/s/ Kristina Robinson Garrett
/s/ Mariam S. Bazzi

---

[4] We decline to address the parties' arguments regarding whether there was sufficient probable cause to authorize the warrant, as we have concluded that the contested search warrant failed to meet the particularity requirement. Further, due to the ambiguities in both the search warrant and affidavit regarding the underlying offense investigated, it is unclear as to which offense the probable-cause standard would pertain to.